# State *ex rel.* Brown *v.* Porter *et al.*

*Prohibition to Prevent Holding an Election to Change the County Seat of Cleburne County.*

(DECIDED NOV. 29, 1905, 40 So. REP. 144.)

1. *Statutes; Constitutionality; Amendment of Bills.*—Where a Senate bill was amended in the House the concurrence of the Senate in the amendment was sufficiently shown where the Journal of the Senate shows that the Senate concurred in the amendment, and sets out the names of the members of the Senate voting to concur, although the amendment was not set out on the Senate Journal; and is a sufficient compliance with the requirements of § 64 of the Constitution of 1901.

2. *Counties; Location of Courthouses; Statutes.*—Under § 41 of the Constitution of 1901, court houses may be located without restrictions as to any point in the county; Sec. 40 of the constitution of 1901 relates to the change of county lines, and has no application to the location of court houses.

3. *Appeals; Harmless Error; Rulings on Pleadings.*—If it is error to sustain a demurrer to a special replication, where the facts alleged in it could have been shown under the general replication, such error was without injury.

4. *Statutes; Enactment; Notice.*—The act providing for the change of county seats (Gen. Acts 1903, p. 117) is a general law and required no notice of an intention to introduce it.

5. *Counties; Change of county Sites; Petition.*—The act providing for change of county sites (Gen. Acts 1903, p. 117) requires that the petition therefor must be lodged with the governor, or his official force in some formal manner, so as to become an official document; and in order for any of the signers to with-

[State *ex rel.* Brown v. Porter *et al.*]

draw from the petition, they must do so with the same degree of formality required in filing the petition.

6. *Same; Petition; Discretion of Governor.*—The act providing for a change of county sites (Gen. Acts 1903, p. 117), lodges in the Governor a discretion to entertain or not to entertain the petition, even when signed by a majority of the voters, if he has reason to believe it was not made in good faith.

APPEAL from Cleburne Circuit Court.

Heard before Hon. JOHN PELHAM.

This was an action in the nature of prohibition or quo warranto by Brown on the relation of the state of Alabama against Porter and others seeking to test the authority of Porter, et al., as commissioners under appointment of the Governor, to hold an election to determine whether or not the county site of Cleburne county should be moved from Edwardsville to Heflin in said county. The court below denied the petition and declared respondents duly appointed commissioners and petitioners appeal.

WHITSON & DRYER, and W. L. MARTIN, for appellants. —The bill providing for the election on courthouse removal is unconstitutional and void. The amendment adopted by the house to the senate bill nowhere appears on the senate journal, which is fatal.—*The Board of Revenue v. Crowe,* 141 Ala. 126. The act is also void for the reason that it does not apply to the whole state and no notice of intention to introduce it was given as is required by section 106 of the constitution, and if it is held to be a general law, it is void for uncertainty in that, its operation was made to depend upon vague, indefinite, uncertain and self contradictory provisions. It is also violative of section 40 of the constitution, as Heflin is within seven miles of the line between the counties of Calhoun and Cleburne.—Section 40, Constitution 1901; *Carroll v. The State,* 58 Ala. 396; *Miller v. Marx,* 55 Ala. 322. The alleged appointment by the Governor of the defendants was void; 1st, because, instead of one petition containing a majority of the voters of the county being filed, the petition shows that forty or fifty petitions, no one of which contain the requisite

majority of electors, were fastened together and filed as
the petition upon which the appointment was made.
And as set out in the fourth replication, to which demur-
rer was sustained, the poll tax of ninety of the signers
had been paid by the citizens of Heflin which disqualified
them as qualified voters under section 182 of the consti-
tution.—Cooley on Const. Lim. (17th Ed.) p. 923. Upon
quo warranto, the defendants must show a valid appoint-
ment.—*West End v. The State,* 138 Ala. 295 and author-
ities cited ;therefore, even if the removal petition con-
tained the names of a majority of the qualified electors
of the county, that majority was wiped out by the with-
drawals.    The right of a petitioner to withdraw his
name, cannot be doubted.—*People v. Sawyer,* 52 N. Y.
296; *Webster v. Bridgewater,* 63 N. H. 296; *Slingerland
v. Norton,* 59 Minn. 351, 61 N. W. 322; *Littell v. Board
of Supervisors,* 198 Ill. 205, 65 N. E. 78; *Theurer v. Peo-
ple,* 211 Ill. 296, 71 N. E. 997; *Kinsloe v. Pogue,* 213 Ill.
302, 72 N. E. 906; *LaLonde v. Board of Supervisors,* 80
Wis. 380, 49 N. W. 960; *State v. Board of Supervisors,*
88 Wis. 355, 60 N. W. 266; *Tucker v. Board of County
Commissioners,* 90 Minn. 406, 97 N. W. 103; *Hoffman
v. Nelson,* 95 N. W. 347; Elliott on Roads & Streets
(2nd Ed.) § 332, and cases cited in note.

  For authorities holding that the bill in its frame and
substance is indefinite and uncertain and therefore in-
capable of enforcement, see *State ex rel Porter v. Crook,*
126 Ala. 600; *Robinson v. McGough,* 118 Ala. 166; *Little
v. Foster,* 130 Ala. 154; *Montgomery B. Works v. Gas-
ton,* 126 Ala. 346; *Harrison v. The State,* 102 Ala. 170;
*County of Cass v. Johnson,* 95 U. S. 360; *Carroll County
v. Smith,* 111 U. S. 556; *St. Joseph v. Rogers,* 83 U. S.
644; *Harshman v. Bates County,* 92 U. S. 569; *Hawkins
v. Carroll County,* 50 Miss. 735; *State v. Sutterfield,* 54
Mo. 391; *State v. Brasfield,* 67 Mo. 331; *State v. Francis,*
95 Mo. 44; *State v. Harris,* 96 Mo. 29; *Gavin v. Atlanta,*
86 Ga. 132; *Mattison v. Wade,* 88 Ga. 669; *People v.
Brown,* 11 Ill. 478.

  As to whether this law is a local or general law, see
*Johnson v. The State,* 100 Ala. 32; *Ex rel Attorney Gen-
eral v. Sayre,* 142 Ala. 641; *Lehman v. Robinson,* 59 Ala.

[State *ex rel.* Brown v. Porter *et al.*]

241; 6 Am. & Eng. Ency. of Law, (2nd Ed.) p. 921; *Askew v. Hale County,* 54 Ala. 639.

.. KNOX, ACKER & BLACKMON, MERRILL & MERRILL, and R. L. EVANS, for appellee.—The appeal in this case should be dismissed, because the appeal has not been taken by the State or by the attorney general or any one authorized by the state in the premises.—Section 3426 of the Code, 1896; Section 12, Code 1896; *Ex parte State of Alabama,* 113 Ala. 85; *D'Aquin's case,* 9 La. Ann. 400; *State v. Duff,* 53 N. W. 446. The allegations of the petition are not sufficient to invoke the jurisdiction of the circuit court, and the plaintiff is not entitled to the relief sought.—*Scarbrough v. Rowan,* 125 Ala. 511. The action is not brought by the direction of the circuit judge and Brown not having been made party complainant with the state, the petition fails to state a cause of action. —*West End v. The State, ex rel,* 138 Ala. 295. Demurrer was the proper method to raise the question that Brown the relator is a necessary party.—*Berlin v. Sheffield Coal & Iron Steel Co.,* 124 Ala. 324; 1 Ency. Pl. & Pr. p. 14. The presumption is that the Governor performed the duties required of him by law, and that his official acts are regular.—22 Am. & Eng. Ency. of Law, pp. 1267-8-9; *State v. Dugan,* 19 S. W. 195; *Riggins v. O'Brien,* 34 Mo. App. 613; *State v. Mackin,* 51 Mo. App. 299; *No. Fire v. United States,* 164 U. S. 657; *Hill v. The State,* 1 Ala. 559. The act was constitutionally passed. If the signers had a right to withdraw, it is clear that the mere signing of the petition and the handing of it to another than the Governor, would not operate as an effectual withdrawal.—*Bean v. Phillips,* 37 Ala. 312, s. c. 38 Ala. 248; *Garlick v. Sangster,* 9 Bing. 46; *Schulte v. First National Bank,* 24 N. W. 320. A paper to be properly filed must be left with the officer, and cannot be taken away.—*Scheuer v. King,* 100 Ala. 238; *Miller v. Wade,* 58 Ind. 91; *Ex parte Miller,* 98 Ind. 451; *List v. Padgett,* 96 Ind. 126; 14 S. C. 35.

ANDERSON, J.—The appellants contend that the act under which the appellees, the respondents in the lower

court, were appointed (Gen. Acts 1903, p. 117), was not constitutionally adopted, it being a senate bill and being amended in the house, and that while the amendment adopted by the house, together with the names of those voting for and against it, were entered at length on the journal of the house that section 64 of the constitution of 1901 requires that the amendment, together with the names of the members voting for and against the concurrence in the amendment, should be recorded at length on the senate journal. The senate journal (pages 591 and 592) shows that senate bill 173, which became the act in question, was sent to the senate with an amendment. On page 592 of the journal we find this entry: "Senate concurred in the House amendment, senate bill 173, which was voted on by 26 yeas and nays none." Following this was the names of the members voting for concurrence. The amendment itself is not set out on the senate journal.

The plaintiff insists that the opinion of this court in the case of *Board of Revenue v. Crow*, 141 Ala. 126, 37 South. 473, holds that the amendment itself must be set out at length on both journals. In that case the following is the language used by the court: "Now, it must not only affirmatively appear upon the journals that provisions of an act which were put into the bill by amendment received the concurrence by yea and nay vote of each house, but it must also appear upon the journals precisely what those amendments were. The purpose of the convention in the ordination of that section manifestly was that only amendments which are set out on the journals, and which the journals affirmatively show received the sanction of each house, should be incorporated in the bill: and the provisions of that section are apt to the effectuation of that purpose." It is true that in the paragraph above quoted this court uses the plural in speaking of journals, but it will be noted that the court is speaking of amendments in general, and not of any particular amendment by one house of a bill originating in the other. It was not the intention of this court to say, in view of the plain language of the constitution, that the amendment itself must be recorded in both journals.

35

The language of the constitution, it seems to us, is too plain to argue for any such construction. That part of section 64 relative to the question at issue is as follows: "No amendment to bills shall be adopted except by a majority of the house wherein the same is offered, nor unless the amendment with the names of those voting for and against the same shall be entered at length on the journal of the house in which the same is adopted, and no amendment to bills by one house shall be concurred in by the other, unless a vote be taken by yeas and nays, and the names of the members voting for and against the same be recorded at length on the journal." This section of the constitution requires two entries to be made upon the journal of the house offering the amendment, viz.: (1) The amendment itself; (2) the names of those voting for and against the same. But when it comes to the matter of concurrence it requires only one entry to be made, viz., the names of the members voting for and against the same. If the constitutional convention intended to require that the amendment itself must be entered at length on the journal of both houses, it certainly did not use the language "to the effectuation of that purpose." They used language indicating clearly that the amendment need only be entered on the journal of the house in which the amendment was offered, and upon that journal only.

There is no merit in the contention of appellant that it would be violative of the constitution to locate the court-house at Heflin, because within less than seven miles of the county line. Section 40 of the constitution relates to the changing of county lines or the creation of new counties, and does not apply to the location of court-houses. Section 41 provides for the removal of court-houses and county sites by a vote of the qualified electors, but places no restriction upon the location, and which may be at any point in the county.

There was no error in sustaining the demurrer to the relator's fourth replication. The respondents had set up as a defense in their answer the fact that their appointment had been made by the Governor, after having been petitioned by a majority of the qualified voters of the

county.  The relator filed along with special replications a general one, to which no demurrer was interposed.  If the facts set up in the fourth replication were pertinent to the issue, which we need not decide, they simply aimed at the eligibility of some of the signers.  If the petition was signed by those who were not qualified to do so, this fact could have been shown under the general replicaiton, and, if there was any error in sustaining the demurrer to the special replication, it was error without injury. The act in question is a general law, and is not repugnant to section 106 of the constitution, because no notice was given of the intended passage of same.  *State ex rel Covington v. Thompson,* 142 Ala. 98, 38 South. 679.

There was an attempt on the part of the appellant to introduce in evidence a certain petition of withdrawal signed by 170 of the persons whose names were signed to the original petition that was presented to the Governor, and to which the trial court sustained objection.  While the authorities are agreed that petitioners cannot withdraw their names after there has been action on the petition, there is a conflict of authority as to their right to do so before action on the petition, but which we need not decide in the case at bar, as the evidence fails to show that the withdrawals attempted were made in such a manner as the law would require in order to preclude the Governor from acting upon the petition as originally presented to him.  The law provides that the petition must be presented to the Governor, meaning that it must be lodged with him or his official force in some formal manner, so as to become an official document.  And section 2 (page 118) of the act requires the Secretary of State to furnish a copy of said petition to the county site commissioners when he issues to them their commission. Thus it must be observed that this original petition must get within the actual custody and control of the Governor.  It therefore stands to reason that, in order for any of the signers to withdraw therefrom, they must do so with a degree of formality corresponding with that contemplated by the law in presenting the original petition. There is not the slightest evidence to show that this so-called withdrawal petition was ever presented to the Gov-

ernor or any one with the authority to receive it from him. It is claimed, and not denied, that it was handed to Capt. Sedberry, but this was not presenting it to the Governor or any one authorized to receive it for him, even if Capt. Sedberry agreed to deliver it to him, and as to which fact there seems to be a conflict in the evidence. Section 19 (page 126) gives the Governor some discretion as to entertaining the petition, even when signed by a majority of the voters, if he has reason to believe it was not made in good faith, and he doubtless sent Capt. Sedberry to the county, as a cautionary measure, to investigate the matter before making the appointments. But if the Governor could have clothed him with authority to receive for him withdrawal petitions, which fact we seriously doubt, there is no evidence that such a power was delegated. The withdrawal petition was never delivered to the Governor by Capt. Sedberry, and he testified that he never called his attention to the fact that he had it. Nor did Mr. Jackson have the right to consider that it was filed in the Governor's office when it was, in fact, locked in Capt. Sedberry's desk in a room in the capitol, separate and apart from the Governor's office, and when it had never gotten in his possession or under his control, and he had never seen it. It may be that Capt. Sedberry was mistaken as to its being in his desk. He may have left it there and it may have been extracted after he left. Or, if there, too many things could have happened to keep it from reaching the Governor's office, and the assumption by Mr. Jackson of a fact that did not exist, although he was actuated by a desire to give the citizens of Edwardsville a fair chance to get the benefit of the petition, cannot be sustained by the court for the purpose of invalidating the action of the Governor in making the appointment of these respondents. The Governor in making these appointments acted as if the withdrawal had not been made, and in so doing he was eminently correct.

The judgment of the circuit court is affirmed.

HARALSON, DOWDELL, and DENSON, JJ., concur.