SIMPSON, J.
— This is an application for a writ of prohibition, to he directed to Hon. John Pelham, judge of the circuit court in Cleburne county, to prohibit and restrain him from proceeding to try said Bud Owens, on the ground that the county seat of said county is at Edwardsville, and not at Heflin, in said county, where the court is being held. The alternative writ is waived, and Judge Pelham answers, basing his authority to hold said court at Heflin on the act of March 3, 1903, and the election held thereunder, so that the entire contention rests upon the proposition as to whether or not said act is valid. This act was before this court heretofore, and the court, after full consideration, held that the act is a. general law, that it was properly exacted, and a valid law.— State ex rel. Brown v. Porter, 145 Ala. 541, 40 South. 144. We are satisfied with that decision, and shall not enter into any of the questions, therein litigated.
It is insisted noAV that the act in question is violative of section 41 of our Constitution, which provides that “no court house or county site shall be removed except by a majority vote of the qualified electors of paid county voting at an election held for such purpose,” because section 17 of the act (Acts 1903, p. 124). provides that “if, upon a canvass of the returns of said election, it shall be ascertained and declared, that a majority of all the legal votes cast were in favor of the removal of the county seat, then the city, town, or village thus selected shall thereafter be the. county seat”; the contention being *406 that, under said section of the Constitution, it requires a majority of all of the qualified electors of said county to vote for the proposition in order to carry it, without regard to the number of votes actually .cast. Without dwelling on the improbability of the Constitution makers enacting a law with such an uncertain quantity in it as a determination of just how many qualified electors were in a certain county'at a given time, with no record of the deaths or removals that may have occurred up to the date of the election, we think the language of the section itself is very clear that it is only a majority of those- who vote that is required. Whether there be, or not, the distinction contended for between the words “voter” and “elector,” it matters not. Thé removal is by “a majority vote.” That of itself, if nothing else was said, would carry with- it the idea, of a majority of the votes; but it says “a majority vote” of whom? If it means of the qualified electors of the county, the word “voting” should be left out. It cannot mean anything else than that it is, as it states, “of the electors voting at an election held for such purposes.” It cannot be the majority vote “voting”; for that rvould be absurd. It cannot be the majority voting; for “majority” is an adjective, qualifying “vote.” There is nothing else for the word “voting” to- qualify, except “electors”; and it is the equivalent of a majority of the electors who vote. We regard' this as the plain and reasonable interpretation of the section,- and it is unnecessary to multiply authorities on this point.
It is next insisted that said act is violative of section 190 of our Constitution, which provides that “the Legislature shall pass laws, not inconsistent with this Constitution,'to regulate and govern elections, and all such laws shall be uniform throughout the state, and shall provide by law for the manner of holding elections and of ascertaining the result of the same.” This provision has reference particularly to the general election laws of the state; but, conceding that it applies to laws providing for elections in the various counties, this law makes provision for all of the counties according to their several needs, and in providing for so many counties, differently situated, it is necessary that they be *407 classified according to their several needs and conditions. It would be manifestly unjust to provide for an election on the same teims and conditions in a county which had just paid- large sums of money and assumed heavy obligations to build a courthouse and jail, as in a new county which had neither. This principle of classification has been so often recognized as not impigning upon the principle of the uniformity of laws that it is unnecessary to discuss it at length. This is not violative of sec. 190 of our Constitution. — Harwood v. Wentworth, 162 U. S. 547, 16 Sup. Ct. 890, 4 0L. Ed. 1069; Bone v. State, 86 Ga. 108, 12 S. E. 205; People v. Haselwood, 116 Ill. 319, 6 N. E. 480; Bronson v. Oberlin, 41 Ohio St. 476, 52 Am. Rep. 90; People v. Henshaw, 76 Cal. 436, 18 Pac. 413.
It is next insisted that section 179 of our Constitution implies absolute and inviolable secrery in voting, not only at the time of casting the ballot, but for the future, and that the act in question violates this provision of our Constitution. As this insistence is very urgent, and supported by quotations from a number of cases, we have examined them with great care, and find that, in the greater number of them, the real point in controversy was not before the court, and these dicta are mainly remarks of the court in cases which sustained the constitutionality of various statutes, which were supposed to impigne on similar constitutional provisions.' In the case of State v. Shane, 9 S. C. 94, the only point decided was that, when the Constitution required judges to be elected by joint ballot, it did not mean viva voce voting. In the case of State ex rel. Briesen v. Barden, 77 Wis. 606, 46 N. W. 899, 10 L. R. A. 155, the point decided was that the printing of the word “judiciary’5 on the ballots cast for one candidate, and not on those cast for another, did not invalidate the ballots; the court saying: “It is not the ballot itself that is at fault, but the use made of it.”—Page 608 of 77 Wis., page 901 of 46 N. W. And this, notwithstanding the statute prohibited any device, etc., on the ballot. State ex rel. Runge v. Anderson, (Wis.) 76 N. W. 482, 42 L. R. A. 239, decided that a candidate’s name could not be placed on the ticket twice because he had been nominated by two parties, *408 and that a statute providing for an official ballot was not unconstitutional because it deprived the voter of the right to make out his own ballot.— State ex rel. Smith v. Anderson., 26 Pla. 240, 8 South. 1, decides that, where a municipal ordinance provided for separate boxes, plainly marked, for the different offices voted for, and that the ballot should contain nothing but the name of the officer voted for, ballots placed in the proper box, but not having the name of the office to be filled, should be counted.—Taylor v. Bleakley, 55 Kan. 1, 39 Pac. 1045, 28 L. R. A. 683, 49 Am. St. Rep. 233, decides that, first, the Legislature may adopt such reasonable regulations and restrictions for the exercise of the elective franchise as may., be deemed necessary to prevent fraud, intimidation, etc.; and, second, the requirement that the ballots shall be numbered is mandatory, and not unconstitutional. The remarks quoted by counsel are in regard to the interpretation of the Kansas statute, and not of any constitutional provision.—Page 14 of 55 Kan., page 1049 of 39 Pac. (28 L. R. A. 683, 49 Am. St. Rep. 233). Ex parte Arnold, 128 Mo. 256, 30 S. W. 768, 1036, 33 L. R. A. 386, 49 Am. St. Rep. 557, decides that the court cannot compel the production of the ballot box before the grand jury, under a Constitution which provided for numbering the ballot, and forbade the officers to make known how the elector voted, except in contests of election.—Page 261 of 128 Mo., page 769 of of 30 S. W. (33 L. R. A. 386, 49 Am. St. Rep. 557). Pearson v. Supervisor, 91 Va. 322, 21 S. E. 483, decides that a statute providing for a constable to aid blind men in preparing their ballots was not unconstitutional; the court remarking that, “while the vote by ballot implies a secret ballot, etc., yet the main object, which is the right to vote, must not be defeated by a too rigid observance of the incidental right, which is that of secrecy.”—Page 334 of 91 Va., page 485 of 21 S. E. Temple v. Mead, 4 Vt. 535, simply held that a printed ballot was valid.—People v. Cicott, 16 Mich. 283, 97 Am. Dec. 141, merely passes upon the effect of several irregularities under the statute. No constitutional question is decided. Attorney General v. Detroit, 58 Mich. 213, 24 N. W. 887, 55 Am. Rep. *409 675, decides that the Requirement of the statute that the election inspectors must be of different political parties is unconstitutional, principally upon the ground That it is a superadded qualification test for office.
Williams v. Stein, 38 Ind. 89, 10 Am. Rep. 97, does decide that an act providing for numbering the ballot is unconstitutional, and for authority cites Judge Denio’s dissenting opinion in People v. Pease, 27 N. Y. 45, 84 Am. Dec. 242, to the effect that “the spirit of. the system requires that the elector should be secured then, and at all times thereafter”; also Temple v. Mead, and People v. Cicott, supra. The opinion, on these authorities, holds that the provision is “contrary to the spirit and substance of the constitutional provision.” The case of Brisbin v. Cleary, 36 Minn. 107, 1 N. Y. 825, does decide that a statute requiring ballots to be numbered is violative of a similar constitutional provision, on the theory that a vote by ballot implies complete and inviolable secrecy. As authorities for this decision, several of the cases supra and a few other are cited; but, upon an examination of them we find them to be expositions of statutes, without reference to constitutional interpretation—the question as to whether a. witness may he compelled to tell how he voted, etc., which do not throw any light on the interpretation of the constitutional provision. The case of Ritchie v. Richards, 14 Utah, 345, 47 Pac. 670, is based upon a constitutional provision requiring elections to be by “secret ballot,” and especially provided that “secrecy in voting shall be preserved.” And the. point decided is that a statute providing for numbering the ballot, and permitting the number to be revealed only in case of a contested election, is not a violation of the Constitution; and the court says: “While we are of opinion that a law might be framed * * better adapted to secure a secret ballot, we are disposed to hold the present law valid, notwithstanding this objection.”—Page 356 of 14 Utah, page 673 of 47 Pac. In the said case the two Associate Justices concur in the result, but differ from the Chief Justice on the validity of the provision requiring the numbering of the ballot, and emphasizing the different wording of their Constitution, *410 which requires a “secret ballot” and also provides that “secrecy shall be preserved.”
In passing upon a constitutional question, there are ceitain fixed principles which should be kept in mind. At an early day in the constitutional history in this country, the question was fully discussed, and finally settled by the highest authorities in the land, that, in order to authorize a court to- declare an act violative of a state Constitution, it must be found obnoxious to the express terms or necessary implication of some article of the Constitution, and the court cannot declare a statute unconstitutional because it is opposed to the “spirit supposed to pervade the Constitution,” or ‘contrary to the first principles of right,” etc. The courts cannot go beyond the “natural and obvious sense” of the constitutional provision. Beyond the plain wording and necessary implications of the Constitution, the carrying out of the general spirit, or conserving the principles of right, becomes a matter of legislative discretion, and not of judicial interpretation. “Any assumption of authority beyond this would be to place in the hands of the judiciary powers too- great and too undefined, either for its own security or the protection of private rights.”— Cooley’s Const. Lim. (7th Ed.) pp. 239-242, and cases cited in note. Our constitutional provision is simply that “all elections by the people shall be by ballot, and all elections by persons in a representative capacity shall be. viva voce.” — Const. § 179.
If we look to the definition of the word “ballot,” we find that it runs back as far as to ancient Greece, and was derived from the Greek word bailo, to throw, and was originally applied to the casting of balls, shells, pebbles, or beans into a box, as the means of deciding, or voting, in both legislative and judicial bodies. It was not always secret, as it is said that the Grecian assemblies and courts were held in the daytime in public places, and the voters were separate from the popular audience only by a. cordon of ropes, and when the voters went up and deposited their ballots it was known how they voted.—2 Am. Ency. p. 541. It is unnecessary to go into the learning on this subject, bringing it through the laws of the Romans and the French. Suf *411 fice it to say that the balls, pebbles, etc., have been succeeded by the paper ballot, which is placed in the box, and, although it may be admitted that the spirit or general purpose of balloting is in the direction of secrecy, yet, as to the extent of that secrecy and the means of preserving it, that is a matter of legislative discretion. The member of a society votes by ballot, although the officer who carries the box around, may see whether he drops in a white marble or a black one, and the man who folds his ticket and drops it into a box ,or hands it to ■an officer to drop it in for him, certainly votes by ballot; and it is for the Legislature, governed by public policy, and in carrying out the spirit and general purpose of the Constitution, to make such regulations as it may deem best for the preservation of the secret thereafter.
The ballot is. simply “a little ball, * * a printed or written ticket used in voting,” etc.; “an act of voting by balls or tickets, by putting the same into a box or urn,” and thus “a secret method of voting.”—5 Cyc. 225. “A ticket or slip of paper, sometimes called a Noting paper,’ on which is printed or written an expression of the elect- or’s choice; a method of secret voting by means of small balls, or printed or written ballots, which are deposited in an urn or box, called a ballot box.’ ” —Century Dictionary. In these and a number of definitions collected in 1 Woods and Phrases, pp. 680, 681, the same idea is predominant—that the ballot is the instrument used in the act of voting, and by using it in that way it is considered a secret mode of voting, as distinguished from a viva voce vote. As to what may be done thereafter is clearly left to legislative discretion.
Resorting to the history of this provision of our Constitution, and the legislative construction of it, it is clear that it has not been understood as involving the interpretation adopted by the Supreme Courts of Minnesota and Indiana. This provision has been in all of the Constitutions of Alabama, from the original Constitution of 1819 to the present time, in practically the same' language. • Yet it is common knowledge that, up to the time of Acts 1878-79, p. 78, the ballots were always numbered and the ballots and the poll lists sent up together *412 (see Code 1876, §§ 271-280), and until a recent period voters made out their own ballots, on any paper and with any device desired. It must be presumed that, if our Constitution makers had desired to- embody in the fundamental law of 1901 any further restrictions or requirements, they would have been expressed in apt words, and not by the adoption of the old expression, which had never been so understood. When we come to examine the act (Acts 1903, p. 117), we find it provides for a paper ticket, which may be either printed or written (section 9) ; for numbering the ballots, to correspond Avith the numbers on the poll list (section 10) ; that the inspectors shall count the voté, certify the poll lists, and send “statements of the vote and poll lists, together Avith the ballots cast,” securely sealed up and properly .indorsed, in an envelope or wrapper, by the returining officer to the board of commissioners at the courthouse (section 14) ; and at the time appointed the commissioners “shall malee a correct statement from the returns, in the presence of such persons as may choose to attend” (section 13). Thus it avüI be seen that the ballots are in the hands of SAVorn officials from the casting to the counting, and 'there is no provision looking to an examination of the ballots, except that they shall reject any ballots shoAvn to be illegal. The act is not violative of section 179 of the Constitution.
It thus appears that Heflin is the place fixed by law in which the courts of said county should be held, and a decree will be here rendered denying the petition.
Weakley, C. J., .and Haralson, Doavdell, and Anderson, JJ., concur.