This is an original application for a writ of mandamus directed to the respondent as secretary of state (of the state of North Dakota) requiring him to cause the names of the relators to be printed on the Democratic primary ballot to be voted at the primary election *Page 275 
to be held on June 30th, 1926, as candidates for nomination by the democratic party for the various congressional and state offices to be filled at the November 1926 election.
There is no controversy as to the facts which are as follows: The respondent, Robert E. Byrne, is secretary of state of the state of North Dakota. The relators are aspirants for nomination by the Democratic party as candidates for congressional and state offices. To that end they caused nominating petitions, as required by § 853, Comp. Laws 1913, to be circulated for signatures. These petitions were signed by the requisite number of democratic electors. The various petitions, contained in one package, were shipped by express to the secretary of state for filing. They arrived at the office of the express company at Bismarck some time on or before Saturday, May 29th, 1926. The capitol in the city of Bismarck, wherein the secretary of state has his office, is not within the zone in which the express company makes delivery of express shipments to consignees. The board of administration of the state of North Dakota likewise has its office in the capitol. The board of administration is charged with various administrative duties, including the general supervision and business administration of the various state institutions, including the capitol. For many years it has been the custom of the express companies to deliver to the board of administration at its office in the capitol all packages received by them consigned to any state officer or department of the state. The board of administration in accordance with this custom receipts for such packages and distributes them to the various state officers or departments to which they are consigned. The various departments of state and the various state officers, including the secretary of state, have recognized this custom and acquiesced in it, and express consignments to them have been thus generally received. No written authority, however, was given by the secretary of state to the board of administration to act for him in this respect. In fact he had given the matter no thought, and assumed that the board was acting for and as the agent of the express companies. The Bismarck office of the American Railway Express Company received the petitions in question at its office on or before Saturday, May 29th, 1926, and, in accordance with the custom hereinbefore mentioned, delivered the same at the office of the board of administration at 11:30 o'clock A.M. on that day. A clerk *Page 276 
in the office of the board of administration received and receipted for the package. The employees (janitors in the capitol) who usually deliver such packages to the consignees were not present in the office at the time. It is the rule and custom of various offices in the capitol, including that of the board of administration, to close at noon on Saturdays. Accordingly, the office of the board of administration was closed at noon on May 29th and the package of petitions was not delivered to the respondent Byrne on that day. The following day, Sunday, the board's office was not open and on Monday the 31st it was not open as that day was observed as Decoration Day. Accordingly, the petitions were not delivered to the respondent, the secretary of state, until Tuesday, June 1st. The respondent had no notice that these petitions had been shipped to him by express. No others were. He kept his office open all of Saturday, May 29th, for the particular purpose of receiving and filing petitions and made inquiry at the postoffice on that day, as well as on the 30th and 31st, to ascertain if any mail containing petitions had been received there addressed to him, and likewise kept his office open on the 31st expressly to accommodate the public so that petitions might be presented to him.
Section 852, Comp. Laws 1913, as amended, provides that a primary election shall be held on the last Wednesday in June of each year in which a general election occurs. So the 1926 primary will be held on June 30th. Section 853, Comp. Laws 1913, provides that candidates for United States senator and other offices therein mentioned shall, not more than sixty days nor less than thirty days prior to the primary election, present their nominating petitions to the secretary of state, whose duty it is to place such candidate's name upon the election ballot to be printed for use at the primary election.
The question now for determination is whether, under the facts as hereinbefore set out, the petitions of the relators were presented to the respondent, secretary of state, in due time and as required by § 853, supra. The relators contend that they were. That by custom and acquiescence the board of administration had become and was the agent of the secretary of state authorized to accept and receive for him such packages as were consigned to him by express; that the law contemplates that nominating petitions may be presented to the secretary of state by and through the usual and customary agencies for transmission *Page 277 
of mail and property; that it does not require that such petitions be presented in person either by the aspirant for nomination or some individual agent; that all the requirements of the law as to presentation were complied with when delivery was made by a customary agency — in this case the American Railway Express Company, to some one authorized by the secretary of state to receive and accept for him mail or property so transmitted. On the other hand the respondent contends that the law requires that petitions be presented to him, or to some one duly authorized by him, in his office in the state capitol; that he afforded every reasonable accommodation to those who might desire to present such petitions; that he had no notice or knowledge that the petitions of the relators were being transmitted to him by express or that they had been delivered to and received by the board of administration; that while it was the custom followed by his and other offices in the capitol to have express delivered to and received by the Board of Administration for such offices, he had given no formal authorization to the Board to perform this function for him; that what was done was purely gratuitous and as a matter of accommodation only and that in the instant case delivery to the board did not constitute presentation to him at his office as required by § 853, supra; that the petitions were not presented to him until June 1st and were, therefore, too late since the election falls on June 30th.
We think it clear that if the petitions were not presented to the secretary of state until June 1st that they were too late. See State ex rel. Anderson v. Falley, 9 N.D. 464, 83 N.W. 913; State ex rel. Miller v. Burnham, 20 N.D. 405, 127 N.W. 504. Thus the whole question is as to whether or not a delivery to the board of administration, under the circumstances here disclosed, constituted a presentation to the secretary of state. We think it equally clear that the law does not contemplate that petitions of aspirants for nomination must be presented by them personally to the secretary of state. To so hold would raise unreasonable obstacles in the way of persons desiring to become candidates for nomination. The spirit of the primary law is exactly to the contrary. Its whole intent and purpose is to provide a simple, direct and inexpensive method by which candidates for office may be nominated by the various political parties. It seeks to afford to every elector the widest possible choice, and contemplates that no one seeking nomination *Page 278 
for office shall be barred by reason of expense. See § 851, Comp. Laws 1913; Johnson v. Grand Forks County, 16 N.D. 363, 125 Am. St. Rep. 662, 113 N.W. 1071. Consistently with this idea we hold that it is the intent of the law that petitions may be presented to the secretary of state through the use of the common and usual agencies for transmission of parcels; that is through the use of postal and express facilities. The relators then were acting reasonably and as the law contemplated that they well might act when they transmitted their petitions to the respondent by express. They were not dilatory, for the petitions so transmitted were received by the local express office on or before May 29th. The express company, acting in its usual manner, delivered these petitions to the board of administration in due course and before the time limit fixed by the statute for the presentation of petitions had expired. It may be conceded that the express company was the agent of the relators for the transmission and presentation of petitions. Somewhere that agency terminated. When delivery was made to some one authorized to receive the petitions it was at an end. Now the board of administration had been receiving and receipting for express packages consigned to the respondent, the secretary of state, or to his office. True, he had given no express authority to the Board to do this. In fact he had given the matter no thought but had assumed that in so receiving and receipting for express consignments the board was acting for the express companies. Clearly, however, it was not. We think that the board must be held to have been the agent of the secretary of state, impliedly authorized to receive such consignments as might be shipped to him by express. Certainly the practice followed with reference to such shipments would justify the board in believing that it was authorized to do these things. Similarly any person employing the express as an agency would be justified in assuming that upon the arrival of the parcel in ample time it would be duly receipted for by an authorized person. The sender ordinarily would not anticipate a break in the transmission due to the receipt of a parcel, according to custom, by an unauthorized agency and its actual delivery subsequently by such agency to the secretary of state. The facts bring the case within the purview of § 6337, Comp. Laws 1913 defining the manner in which actual authority may be conferred upon an agent. See also Bernard v. Madsen, 52 N.D. 822, 204 N.W. 196. Under § 656, Comp. Laws *Page 279 
1913, the board of administration is authorized and empowered to provide "express" for the state offices, and there is a logical connection between this function and that of receiving express parcels. The board of administration was therefore the agent of the secretary of state, impliedly authorized to receive such consignments as might be shipped to him by express. At the time that it received these petitions the office of the secretary of state was open. Petitions might properly be presented. By reason of the peculiar combination of circumstances the petitions did not actually reach the secretary of state until after the time limit of the statute had expired. But they did reach his agent within the statutory time. The secretary of state is wholly blameless in the matter; no fault can he charged to him. He is confronted by a problem which is not of his making. On the other hand, the relators are without fault, unless it be a fault that the petitions were not presented by personal agents or were not transmitted at an earlier time. Since the law contemplates that candidates for nomination shall have until the thirtieth day before the election within which to secure signatures and present their petitions, there was no fault in these respects. We think it is but reasonable to say that for the purpose of presentation, under the circumstances as here disclosed, the office of the board of administration was the office of the secretary of state. Receipt of the petitions by the board was presentation to the secretary of state. The relators are entitled to have their names placed upon the ballot.
The writ will therefore issue.
BIRDZELL, BURKE, and JOHNSON, JJ., concur.