## Cammack, Attorney General, et al. v. Harris.

(Decided June 17, 1930.)

847

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Jr., Assistant Attorney General, for appellants.

ALLEN PREWITT for appellee.

ɪOPINION OF THE COURT BY ·COMMISSIONER STANLEY— Affirming.

This suit tests the validity of the veto by the Governor of an act of the General Assembly passed at its 1930 Session, known as House Bill No. 559, establishing in counties which ·contain cities of the first class a civil service board to appoint and govern county patrols. The act was duly passed, enrolled, and signed by the presid-- ing officers of the Senate and House of Representatives and presented to the Honorable Flem D. Sampson, Governor of the Commonwealth, as is required by section 88 of the Constitution. So much of that section as is involved in this decision reads as follows:

"Every bill which shall have passed the two houses shall be presented to the governor, If he approve, he shall sign it; but if not, he shall return it, with his objections, to the house in which it originated, which shall enter the objections in full upon its journal, and proceed to reconsider it. . . . If

any bill shall not be returned by the governor within ten days (Sundays excepted) after it shall have been presented to him, it shall be a law in like manner as if he had signed it, unless the general assembly, by their adjournment, prevent its return, in which case it shall be a law, unless disapproved by him within ten days after the adjournment, in which case his veto message shall be spread upon the register kept by the secretary of state.''

The trial court granted the prayer of the plaintiff, a taxpayer, and enjoined the Attorney General from publishing the act under the terms of section 2438 of the Statutes, and the auditor and treasurer from issuing and paying warrants covering its publication. The defendants (now appellants) maintain that the act automatically became a law because it was not vetoed and returned to the General Assembly within ten days after it was presented to him, and that the action of the Governor in disapproving the bill after the expiration of that period was a nullity.

The questions presented are: (1) When was the bill presented to the Governor? (2) Is the day on which the bill was presented to be counted as "within ten days" in which the Governor must act with respect to his approval? And (3) what is the effect of his having signed a veto message on March 20th, the day the Legislature adjourned sine die, and delivered it on March 21st to the secretary of state?

The history of the presentation of the bill is, briefly, this: On Saturday, March 8th, the House formally ordered its clerk to deliver the bill to the Governor. That afternoon the clerk carried it and other bills to the Governor's office, but found it closed and the Governor and his staff not there. Not obtaining admission, he announced in a voice sufficiently loud to have been heard within that the clerk of the House of Representatives was there and had with him House Bill No. 559 and desired to deliver it to the Governor for his approval or disapproval. He testified that it was near 3 o'clock and that the House had adjourned. Early in the morning session of that day the House had adopted a resolution that it would stand adjourned at 2 p. m., until Monday, March 10th, and the journal shows that it did adjourn at that hour. There is an entry, however, reciting that the clerk had attempted to deliver the bill involved in the

manner above stated, but there is no contradiction that it had in fact adjourned about 12:30. However, the record of the journal must, under a universal rule, be accepted.

The Governor was in his office uninterruptedly from 7 a. m. until 2 p. m. on March 8th. He was informed that both the Senate and House had adjourned at 12:30 p. m., until the following Monday. He left the executive offices and the Capitol in the usual way about 2:30 and went for an automobile ride, driving through the city. He had received no intimation that the clerk of the House desired to deliver any bill to him. It is shown that it was the custom for the Governor to be in his offices on Saturday afternoon. But on this occasion he had informed the members of his staff that as the following week would probably be a strenuous one on account of the closing days of the Legislature, they might close the office for the day. His secretary stated that about 1 o'clock he took certain bills, accompanied by veto messages of the Governor, to the offices of the clerks of the two Houses and found that both bodies had adjourned and the clerks gone. They returned, however, about two o'clock, and he delivered the bills and messages to them at that hour. Nothing was said to him by either of them that there would be other bills to be presented to the Governor that day, and shortly thereafter he left his office and went to Louisville. Another secretary went to his home at Eminence. The statements of the Governor's secretary are not contradicted. While the clerk of the House called the Executive Mansion over the telephone promptly after he called at the Governor's office and then endeavored to locate him or one of his secretaries without success, it does not appear that the Governor himself could not be located at the Mansion or elsewhere in the Capitol late that afternoon or during the evening. No further effort is shown to have been made to present the bill later than a short time after 3 o'clock.

We do not think it can with fairness or reason be said on the evidence that the Governor or any member of his staff was evading the presentation of any bill, or that they acted other than in perfect good faith. Not only might the Chief Executive, in the exercise of his discretion, close his office at the hour he did, but it is specifically provided by section 3766a of the Statutes that it shall be lawful for the public offices in the commonwealth

to be closed at 1 o'clock p. m., Saturday throughout the whole year, with an exception not material here.

On March 10th the bill was presented to the Governor's secretary, who was authorized to receive bills, but under instructions of the executive he refused to accept it because it bore notations showing a delivery on the 8th and a memorandum of the actions of the clerk on that day. The Governor was of the opinion he should not receive a mutilated bill.

On March 12th the bill was again brought to the executive offices and left on a desk and was by the secretary delivered to the Governor.

Was the bill presented to the Governor on Saturday afternoon, March 8th, within the meaning of the Constitution?

Under our scheme of government the executive is apportioned a very important part in the performance of the legislative function and the presentation of bills to him is a vital factor in their enactment. The veto power, though exercised by an officer whose functions are principally executive, is essentially legislative in its nature, though of a negative or destructive character. It is by all authorities declared that in performing that duty the Governor is considered to be a part of the law-making body. Cooley's Constitutional limitations, p. 321; 25 R. C. L. 888. The act of the executive with respect to the veto of a bill is entitled to as much consideration and to the same presumption of validity and constitutionality as is the action of the Legislative bodies in originally passing the bill. Texas Co. v. State, 31 Ariz. 485, 254 P. 1060, 53 A. L. R. 258.

The Constitution merely provides that the bill shall be presented to the Governor. No method of presentation being given, it is for the courts to determine when the provision has been complied with. The court is not inclined to undertake the establishment of a fixed rule of procedure or to define the term, preferring rather to decide each case as it may arise according to the particular circumstances. But it is of interest to note a few opinions in which the subject has been treated by other courts.

In an opinion of justices of the Supreme Judicial Court of New Hampshire, reported in 44 N. H. 633, under the style "Soldiers' Voting Bill," it was held there was a sufficient presentation when a bill in accordance with the customary mode of presenting bills to the

Governor, was taken to his office and it was announced by the assistant clerk of the Senate that he had a bill for the Governor and it was laid on a table in his office during his absence from the room where he had been that morning, but did not return during the afternoon, although he had expected to do so. At the time members of the Governor's official staff were present.

In state exrel. Brown v. Porter, 145 Ala. 541, 40 So. 144, 145, the term "presented to the Governor," as used in a statute providing that certain petitions should be presented to the Governor, was construed as meaning that a petition must be lodged with him or his office furce in some formal manner so as to become an official document.

In State ex rel. State Pharmaceutical Association v. Michel, Secretary of State, 52 La. Ann. 936, 27 So. 565, the Supreme Court of Louisiana held that a bill is to be considered as presented to the Governor when the clerk or secretary of the legislative body carries the bill to the executive office and offers or tenders it to the Governor or his secretary. The facts in that case were that a bill was carried to the Governor's office about 10 or 11 o'clock on the night of the day on which the bill had been signed by the presiding officers of the legislative bodies. The Governor's secretary had gone home, but the Governor was there and declined in person to receive the bill at that hour. Article 41 of that Constitution (1898) provided: "As soon as bills are signed by the Speaker of the House and President of the Senate they shall be taken at once, and on the same day, to the Governor," etc. And article 76 provided: "Every bill . . . shall be presented to the Governor." It was held that the tender to the Governor in person was a presentation within the meaning of the Constitution.

In State v. South Norwalk, 77 Conn. 257, 58 A. 759, it was declared that under the terms of the Constitution of that state, which are similar to ours, a bill could not be deemed to have been presented to the Governor until it had been in some way put into his custody or into that of some one properly representing him.

In State v. Byrne, 54 N. D. 274, 209 N. W. 345, it was held that a presentation of petitions to the secretary of state is usually deemed sufficient if the delivery is made in the usual manner to some agent authorized to receive the document within the time prescribed by law.

■ A Constitution must be interpreted liberally to effectuate the principles of government which it

852

embodies. Dealing broadly with general subjects, its language, if doubtful or subject to limitation, should not be construed in a narrow sense, but be given a meaning according to the common understanding of men. The challenged bill not having been brought to the executive's offices during office hours, the Governor and his staff having been available until after both bodies of the Legislature had adjourned, the transactions immediately preceding their departure from the Capital having indicated there would be no additional bills tendered during the day, and there being no indication that the Governor or his authorized agents were evading presentation of the bill, due consideration to the usual manner of transacting business between individuals with an honesty of purpose to co-operate harmoniously impels the court to the conclusion that the bill was not presented to the Governor on March 8th in a way intended by the Constitution and in a manner sanctioned by ordinary business practices.

■ We are not called upon to decide whether the action of the Governor in refusing to accept tender of the bill on Monday, March 10th, was justified, or that it was properly presented on that day, for under the opinion in Lewis, Secretary of State, v. Cozine, Ky. 28 S. W. (2d) —, decided June 13th, it is not to be counted as within the ten days (Sundays excepted) in which the Governor had to consider and return the bill. The Legislature adjourned sine die on March 20th, and the executive had to and including March 21st to act upon the bill if it be conceded it was presented on the 10th rather than the 12th.

■ The Governor's veto message bears date of March 20th, but the bill with the veto was not delivered to the secretary of state until March 21st, which was in accordance with the constitutional mandate. It is argued by the appellants that the indorsement of the reasons for the veto constituted his disapproval and its date constituted the time of such act. That was while the Legislature was still in session. Just before adjournment a committee from the two Houses formally waited upon the Governor and inquired if he had any further communication, and was advised that he had not. It is claimed that not having returned the bill to the House after his disapproval, the Governor's act was nugatory and ineffectual, and the bill became a law notwithstanding it.

Assuming proper presentation on the 10th, the Governor had, as stated, until midnight of March 21st to approve or disapprove the bill. The date of his message of disapproval is immaterial. The document was under his control until midnight of the 21st, or until it was officially returned either to the House before final adjournment or delivered to the secretary of state after adjournment. He might have erased the entire statement and written another on the 21st had he chosen. Thus it is said in Cooley's Constitutional Limitations, p. 323:

"The Governor's approval is not complete until the bill has passed beyond his control by the constitutional and customary mode of legislation; and at any time prior to that he may reconsider and retract any approval previously made."

See also 36 Cyc. 961; State v. New London Savings Bank, 79 Conn. 141, 64 A. 5; People v. McCullough, 210 Ill. 488, 71 N. E. 602; Alleghany County v. Warfield, 100 Md. 516, 60 A. 599, 108 Am. St. Rep. 446. And compare McKenzie, Secretary of State, v. Moore, 92 Ky. 221, 17 S. W. 483, 13 Ky. Law Rep. 509, 14 L. R. A. 251.

The veto was consummated when the bill carrying it was delivered to the secretary of state on March 21st, and it never became a law of the commonwealth.

The judgment is affirmed.

Whole court sitting.

Judge LOGAN dissenting.