******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ONE ELMCROFT STAMFORD, LLC *v.* ZONING BOARD OF APPEALS OF THE CITY OF STAMFORD ET AL.
## (AC 41208)

Sheldon, Elgo and Lavery, Js.*

*Syllabus*

The plaintiff appealed to the trial court from the decision by the defendant zoning board of appeals granting the application of the defendant P, filed on behalf of the defendant P Co., for approval of the location of a used car dealer on certain real property. The plaintiff claimed, inter alia, that the board failed to conduct the requisite suitability analysis, as required by the applicable statute (§ 14-55). The court agreed with the plaintiff's argument that § 14-55 applied and acknowledged that the board's certificate of approval looked and read like a variance, but concluded that the board gave due consideration to the suitability of the proposed use and that the board's decision was, thus, akin to an approval under § 14-55. The trial court subsequently rendered judgment denying the plaintiff's appeal from the board's decision, from which the plaintiff appealed to this court. On appeal, the plaintiff claimed, inter alia, that although published editions of the General Statutes have stated that § 14-55 has been repealed, in actuality, it has not been repealed, and that had the board properly followed § 14-55, it would have considered the suitability factors set forth therein. Although Public Acts 2003, No. 03-184, § 10 (P.A. 03-184), repealed § 14-55, effective October 1, 2003, Public Acts 2003, No. 03-265, § 9 (P.A. 03-265), which also became effective October 1, 2003, repealed and replaced § 14-55. *Held*:

1. The plaintiff could not prevail on its claim that the trial court improperly concluded that the named applicant, P, had standing to apply to the board for location approval and, accordingly, was a proper party, which was based on its claim that P Co., in its business capacity, sought a used car dealer's license from the Department of Motor Vehicles, but the certificate of approval of the location application and subsequent hearing notification listed P as the applicant and, thus, the board's approval of P's application was improper because its decision was rendered in favor of a person rather than in the name of the proposed licensee; the record revealed that although P Co. was not the named applicant on the certificate of approval application, the totality of the circumstances sufficiently linked P to P Co., such that no one was misled or misunderstood the nature of the application, and, thus, the trial court did not err in concluding that P, as a representative of P Co., had standing to apply to the board for location approval.

2. Because § 14-55 has not been repealed, the board should have reviewed P's application under the standard set forth therein; given that there was no mention in P.A. 03-265, which repealed and replaced § 14-55, effective October 1, 2003, of P.A. 03-184, which ostensibly repealed § 14-55, effective October 1, 2003, and it was impossible to simultaneously give effect to both of those public acts, they were in irreconcilable conflict, and, thus, pursuant to statute (§ 2-30b), the later public act, P.A. 03-265, was deemed to have repealed and replaced the older public act, P.A. 03-184.

3. The board mistakenly treated P's application as if it were an application for a variance and, thus, failed to comply with the requirements set forth in § 14-55 in granting that application; even though P's application was a matter to which § 14-55 applied and even though the board heard evidence and issued several conditions of approval that, to some extent, could pertain to suitability, the record revealed that on several occasions P's application was referred to and treated as an application for a variance, the reasons that the board provided in its certificate of approval and the conditions provided therein were made with reference to an application for a variance, the board issued only one factual finding, in which it expressly applied variance standards provided in the local zoning regulations, and the board issued no findings as to the suitability factors enumerated under § 14-55.

4. The trial court erred in searching beyond the board's stated reason for approval to find a basis for the board's decision and improperly upheld the board's decision on alternative grounds; because the board had stated its reason for approval, the trial court was not permitted to search the record for evidence that could support alternative grounds on which the board could have granted P's application, and, thus, when the court reviewed the record to determine whether the evidence could support a conclusion that the suitability requirement of § 14-55 was satisfied, even though the board did not make any findings on that point, the court was incorrect in substituting its own judgment for that of the board.

Argued February 13—officially released September 3, 2019

*Procedural History*

Appeal from the decision by the named defendant granting the application of the defendant Pasquale Pisano for approval of the location of a used car dealer on certain real property, brought to the Superior Court in the judicial district of New Britain and transferred to the judicial district of Stamford-Norwalk, where the matter was tried to the court, *Hon. Taggart D. Adams*, judge trial referee; judgment denying the plaintiff's appeal, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Jeffrey P. Nichols*, with whom was *John W. Knuff*, for the appellant (plaintiff).

*James V. Minor*, special corporation counsel, with whom was *Kathryn Emmett*, director of legal affairs, for the appellee (named defendant).

*Gerald M. Fox III*, for the appellees (defendant Pasquale Pisano et al.).

*Opinion*

LAVERY, J. The plaintiff, One Elmcroft Stamford, LLC, appeals from the judgment of the Superior Court denying its appeal from the decision of the defendant Zoning Board of Appeals of the City of Stamford (board), approving the application of the defendant Pasquale Pisano (defendant) to locate the defendant used car business, Pisano Brothers Automotive, Inc. (Pisano Brothers), at 86 Elmcroft Road in Stamford. On appeal, the plaintiff claims that the court improperly (1) determined that the defendant had standing to apply to the board for approval of the application, (2) upheld the board's decision, despite the board's failure to review the application in accordance with General Statutes § 14-55,[1] and (3) searched beyond the board's stated reason for approval of the application.[2] We disagree with the plaintiff's first claim but agree with the plaintiff's second and third claims. Accordingly, we reverse the judgment of the Superior Court.

The following facts and procedural history are relevant. Pisano Brothers is the lessee of the 6500 square foot parcel located at 86 Elmcroft Road in Stamford (property), in a General Industrial (M-G) zone. The plaintiff owns abutting property at 126 Elmcroft Road.

In June, 2016, the defendant, on behalf of Pisano Brothers, applied for a used car dealer license from the Department of Motor Vehicles, listing himself as vice president and his brother as president. Pursuant to General Statutes § 14-54, a license for "dealing in or repairing motor vehicles" requires a "certificate of approval of the location" (certificate of approval) from the appropriate local board. Accordingly, the defendant additionally applied to the board for its approval of a "used car dealer" on the M-G zoned property (Pisano application).

The board referred the Pisano application to various city agencies and boards. The record contains advisements from the Planning Board of the City of Stamford (planning board) and the Engineering Bureau of the City of Stamford (engineering bureau). In a letter to the board dated September 8, 2016, the planning board "unanimously recommended denial of [the Pisano application]," opining "that the proposed application does not keep with the character of the neighborhood and . . . [is] not consistent with the 2015 Master Plan Category #9 (Urban Mixed-Use)." The engineering bureau advised that it found the proposal "will not result in any adverse drainage impacts" and, further, that approval of the Pisano application should be conditioned on the installation of a "[n]ew concrete curb and sidewalk . . . along the frontage of the property."

On September 14, 2016, the board held a public hearing on the Pisano application. The board posed several questions to the defendant and his attorney, Gerald

M. Fox III. Two individuals spoke against the Pisano application. They were concerned about the inability to conceal the building and parking lot on the property with fencing, the lack of sidewalks, and the potential for a crowded parking lot. The plaintiff did not offer comment. The board, during its deliberations, noted that the defendant seemed amenable to complying with various conditions of approval that would make the property compatible with the local neighborhood. The board unanimously voted to approve the Pisano application. Subsequently, on September 29, 2016, the board issued a letter to the defendant, stating its approval and setting forth several conditions.

Pursuant to General Statutes § 14-57 and the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-183 et seq., the plaintiff appealed to the Superior Court. The plaintiff advanced three claims: (1) the defendant was not a proper party and lacked standing to apply to the board for location approval, (2) the board did not comply with hearing notice requirements, and (3) the board failed to conduct the requisite suitability analysis, as prescribed in § 14-55. As to the first two claims, the court disagreed. As to the third claim, the court agreed with the plaintiff's argument that § 14-55 applied and further acknowledged that "the board's certificate of approval looks and reads like a variance." Upon its review of the transcript from the September 14, 2016 public hearing, however, the court concluded that the board, nonetheless, gave due consideration to the suitability of the proposed use. It, therefore, reasoned that the board's decision was akin to an approval under § 14-55.[3] Accordingly, the court, in its memorandum of decision dated December 13, 2017, denied the plaintiff's appeal. Subsequently, pursuant to General Statutes § 4-184, the plaintiff appealed to this court.[4] Additional facts and procedural history will be set forth as necessary.

I

We first address the plaintiff's claim that the court improperly concluded that the named applicant, the defendant, had standing to apply to the board for location approval and, accordingly, was a proper party. The plaintiff notes that Pisano Brothers, in its business capacity, sought a used car dealer's license from the Department of Motor Vehicles, but the certificate of approval application and the subsequent hearing notification listed the defendant as the applicant. Accordingly, the plaintiff contends that the board's approval of the Pisano application was improper because its decision was rendered in favor of a person rather than in the name of the proposed licensee. The plaintiff cited no authority in support of this proposition. We are not persuaded.

"[T]he standard for determining whether a party has standing to apply in a zoning matter is less stringent

[than the standard that applies to a determination of whether a party is aggrieved]. A party need have only a sufficient interest in the property to have standing to apply in zoning matters. . . . [I]t is not possible to extract a precise comprehensive principle which adequately defines the necessary interest . . . ." (Internal quotation marks omitted.) *RYA Corp.* v. *Planning & Zoning Commission*, 87 Conn. App. 658, 663, 867 A.2d 97 (2005). Here, the issue is not whether Pisano Brothers has standing but, instead, whether standing, in effect, was voided by virtue of a technical glitch in listing the defendant as the applicant.

*RYA Corp.* v. *Planning & Zoning Commission*, supra, 87 Conn. App. 658, presented similar circumstances as in the present case. In that case, the applicable zoning regulations required that an applicant be a "record owner or developer . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 669. Although the plaintiff subdivision applicant, The RYA Corporation (RYA), did not qualify as such, the plaintiff record owner, Myers Nursery, Inc. (Myers, Inc.), consented in writing to RYA filing the application. Id., 667–68. The defendant planning and zoning commission claimed that the trial court improperly concluded that Myers, Inc., had standing to appeal the planning and zoning commission's decision, arguing that RYA had not "established definitively by the terms of the consent form" that it was acting under the authority of Myers, Inc. Id., 668.

This court concluded that the property owner requirement set forth in the applicable zoning regulations was satisfied, stating: "As a matter of law, we are not persuaded that the trial court was required to read these documents as narrowly as do[es] the [planning and zoning commission]. Taking into account the totality of the relationship between Myers, Inc., and RYA, the court had the authority to conclude that the physical linkage between the application and the consent form gave Myers, Inc., a sufficient interest to have standing to contest the denial of the proposed subdivision. This conclusion is supported not only by the nature of the documentation itself but because, as noted previously, the court reasonably might have found that RYA was acting as Myers, Inc.'s agent in filing the subdivision application." Id.; see also *Loew* v. *Falsey*, 144 Conn. 67, 73–74, 127 A.2d 67 (1956) (fact that owner of corporation, E. M. Loew, applied for permit in his own name, rather than in name of his corporation, E. M. Loew, Inc., did not mislead anyone and there was no reason why permit could not have been granted under name provided, and, accordingly, no jurisdictional defect resulted simply by incorrectly using name of owner in permit application).

Similarly, the record in the present case reveals that although Pisano Brothers was not the named applicant

on the certificate of approval application, the totality of the circumstances sufficiently link the defendant to Pisano Brothers, such that no one was misled or misunderstood the nature of the application. The application for a used car dealer license from the Department of Motor Vehicles lists "Pisano Brothers Automotive Inc." as the name under which the business was to be conducted, with the defendant and his brother identified as officers of the company. The proposed improvement location survey identified "Pisano Brothers Automotive, Inc.," as the prospective user. Additionally, at the outset of the public hearing, the defendant was introduced as one of the owners of Pisano Brothers, along with his brother. Accordingly, we conclude that the court did not err in concluding that the defendant, as a representative of Pisano Brothers, had standing to apply to the board for location approval.

II

The plaintiff claims that the court erred in upholding the board's decision, despite the board's failure to apply the standard set forth in § 14-55. Although the plaintiff did not offer comment or argument before the board during the public hearing, the plaintiff argued before the trial court that despite the fact that the then current edition of the General Statutes provided that § 14-55 had been repealed, in actuality, it had not been repealed. The plaintiff contended that had the board properly followed § 14-55, it would have considered the suitability factors set forth therein, namely, "due consideration to [the proposed use's] location in reference to schools, churches, theaters, traffic conditions, width of highway and effect on public travel." The plaintiff, therefore, contended that the board not only failed to issue any findings as to these suitability factors, but, further, it improperly treated the Pisano application as one for a variance. The court concluded that the record reflected that the board gave due consideration to the requisite suitability factors. The court, therefore, denied the plaintiff's appeal.

Before this court, the plaintiff maintains that, despite the fact that published editions of the General Statutes have stated that § 14-55 has been repealed, in actuality, it has not been repealed. The board agrees that the statute has not been repealed but argues, nonetheless, that it substantially complied with the statute's requirements in granting the Pisano application. The defendant and Pisano Brothers argue that § 14-55 was repealed but that, even if it was not repealed, the board substantially complied with the statute. We conclude that (1) § 14-55 had not been repealed at the time of the board's action on the Pisano application, and (2) the board mistakenly treated the Pisano application as if it were an application for a variance and, thus, failed to comply with the requirements set forth in § 14-55 in granting that application. We will address both matters in turn.

## A

As a threshold matter, we address whether § 14-55 had been repealed at the time of the board's action. This precise issue was addressed by our Superior Court in 2011 in an opinion authored by the court, *D. Tobin, J.*, which concluded that § 14-55 was not repealed. See *East Coast Towing, Ltd.* v. *Zoning Board of Appeals*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-10-6003028-S (March 2, 2011) (51 Conn. L. Rptr. 572). The plaintiff submits that the court's decision in *East Coast Towing, Ltd.*, was sound and, accordingly, that the court correctly concluded that § 14-55 remained in effect, despite its apparent repeal. We agree with Judge Tobin's well reasoned decision in *East Coast Towing, Ltd.*, and, accordingly, conclude that § 14-55 has not been repealed.

"The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z. Following the apparent repeal of § 14-55, we are left with no text to consider. Accordingly, to determine whether this statute remains in effect, we will look to extratextual evidence, such as the legislative history. See *State* v. *Russo*, 259 Conn. 436, 447–48, 790 A.2d 1132 (process of statutory interpretation involves, inter alia, searching legislative history to discern legislative intent), cert. denied, 537 U.S. 879, 123 S. Ct. 79, 154 L. Ed. 2d 134 (2002). Although compilations of the General Statutes list § 14-55 as having been "repealed," this fact is not dispositive of the issue at hand.[5]

Judge Tobin's decision in *East Coast Towing, Ltd.*, provides a well reasoned and principled basis upon which we also conclude that § 14-55 has not been repealed. Judge Tobin's reasoning was as follows. In 2003, the legislature made a series of changes to § 14-55. First, in Public Acts 2003, No. 03-184, § 10 (P.A. 03-184), the legislature ostensibly repealed § 14-55 of our General Statutes, effective October 1, 2003. *East Coast Towing, Ltd.* v. *Zoning Board of Appeals*, supra, 51 Conn. L. Rptr. 575. The legislature then, in Public Acts 2003, No. 03-265, § 9 (P.A. 03-265), repealed and replaced § 14-55, also effective October 1, 2003.[6] Id., 575–76. Finally, in Public Acts 2003, No. 03-278, § 40, which took effect from passage on July 9, 2003, the legislature repealed and replaced the then current version of § 14-55, making a minor, technical correction to it without any mention of either P.A. 03-184, § 10, or P.A. 03-265, § 9, both of which were to become effective on October 1, 2003.[7] See id., 576.

Pursuant to General Statutes § 2-30b (a), "[w]hen two or more acts passed at the same session of the General Assembly amend the same section of the general statutes, or the same section of a public or special act, and reference to the earlier adopted act is not made in the act passed later, each amendment shall be effective except in the case of irreconcilable conflict, in which case the act which was passed last in the second house of the General Assembly shall be deemed to have repealed the irreconcilable provision contained in the earlier act . . . ." Our Supreme Court has held that the term "amendment," as used in § 2-30b, applies "to all acts which expressly change existing legislation," including public acts. (Internal quotation marks omitted.) *State* v. *Kozlowski*, 199 Conn. 667, 676, 509 A.2d 20 (1986).

In the present case, there is no mention in P.A. 03-265 of P.A. 03-184, and it is impossible to give effect to both public acts, simultaneously. Accordingly, P.A. 03-184 and P.A. 03-265 are in "irreconcilable conflict." Thus, pursuant to § 2-30b, the later public act must be deemed to have repealed and replaced the older public act. See also footnote 7 of this opinion.

Public Act 03-184 was passed by the House of Representatives on May 13, 2003, then by the Senate on June 2, 2003, and, subsequently was signed into law by the governor on June 26, 2003. Public Act 03-265 was passed by both houses of the legislature on June 4, 2003, and, subsequently was signed into law by the governor on July 9, 2003. With both public acts being in irreconcilable conflict, and with P.A. 03-265 being enacted last, P.A. 03-265 sets forth the version of the statute that went into effect.

We are aware of no laws that have been passed to repeal or otherwise amend § 14-55 since Judge Tobin's decision in *East Coast Towing, Ltd.* Additionally, no appeal was taken from Judge Tobin's decision and, otherwise, there have been no appellate decisions addressing whether the version of § 14-55 set forth in P.A. 03-265 has been repealed. We are persuaded that Judge Tobin's analysis is correct, and, therefore, we adopt his reasoning.

Accordingly, we conclude, in accordance with the language of P.A. 03-265, § 9, that the current revision of § 14-55 of the General Statutes, which remains in effect to this date, provides: "In any town, city or borough the local authorities referred to in section 14-54 shall, upon receipt of an application for a certificate of approval referred to in said section, assign the same for hearing within sixty-five days of the receipt of such application. Notice of the time and place of such hearing shall be published in a newspaper having a general circulation in such town, city or borough at least twice, at intervals of not less than two days, the first not more

than fifteen, nor less than ten days, and the last not less than two days before the date of such hearing and sent by certified mail to the applicant not less than fifteen days before the date of such hearing. All decisions on such certificate of approval shall be rendered within sixty-five days of such hearing. The applicant may consent to one or more extensions of any period specified in this section, provided the total extension of any such period shall not be for longer than the original period as specified in this section. The reasons for granting or denying such application shall be stated by the board or official. Notice of the decision shall be published in a newspaper having a general circulation in such town, city or borough and sent by certified mail to the applicant within fifteen days after such decision has been rendered. Such applicant shall pay a fee of ten dollars, together with the costs of publication and expenses of such hearing, to the treasurer of such town, city or borough. No such certificate shall be issued until the application has been approved and such location has been found suitable for the business intended, with due consideration to its location in reference to schools, churches, theaters, traffic conditions, width of highway and effect on public travel. In any case in which such approval has been previously granted for any location, the local authority may waive the requirement of a hearing on a subsequent application. In addition, the local authority may waive the requirement of a hearing on an application wherein the previously approved location of a place of business is to be enlarged to include adjoining or adjacent property."

In light of the foregoing analysis, we conclude that § 14-55 was not repealed. Accordingly, the board should have reviewed the Pisano application under the standard set forth therein.

B

We now address whether the board, despite erroneously treating the Pisano application as one for a variance, complied with the requirements of § 14-55. The plaintiff claims that the board approved the Pisano application under the wrong standard. It contends that the board mistakenly treated the Pisano application as though it was an application for a variance and, in so doing, applied a set of criteria that did not comport with the analysis required under § 14-55. The board contends that the court correctly determined that the board gave due consideration to the necessary factors. The defendant and Pisano Brothers essentially contend that the use of variance language by the board was merely a clerical error. We agree with the plaintiff.

The record reveals that on several occasions the Pisano application was referred to and treated as an application for a variance. On his certificate of approval application, the defendant requested a variance for the following section of the Stamford zoning regulations:

"APA TAB II #55 to allow a used car dealer to [b]e [l]ocated in . . . [M-G] zone." In reviewing the Pisano application, the engineering bureau referred to the application as a "variance to allow for a used car dealer to be located in the M-G [z]one . . . ." At the outset of the public hearings, a board member further stated, without correction, that "[t]he engineering bureau has reviewed the plans for a variance to allow for a used car dealer to be located in the [M-G] zone . . . ." Further, the board's certificate of decision regarding the Pisano application certified that it granted "the application . . . for a variance of Motor Vehicle approval of Table II, Appendix A, #55 (Auto Sales Requirements) of the Zoning Regulations . . . ."

In approving the Pisano application, the board issued one finding, in which it directly quoted the following variance standard provided in the Stamford zoning regulations: "[S]trict application of the provisions of these Regulations would deprive the applicant of the reasonable use of such land or building and the granting of the variance is necessary for the reasonable use of the land or building."[8] Stamford Zoning Regs., art. v, § 19 (2.2) (a) (2). In so finding, as the plaintiff contends, the board expressly (1) applied variance standards provided in the local zoning regulations, instead of certificate of approval standards provided in § 14-55, and (2) based its decision on the defendant's private "deprivation," instead of basing its decision on the suitability of the proposed use. We agree with the court that "the board's certificate of approval looks and reads like a variance."[9]

"[W]here a board is acting pursuant to a statute or an ordinance which requires a specific finding made after a consideration of enumerated factors, the minutes of the board should show that due consideration was given to those factors and that the conclusion reached was within the power given to the board." *Dubiel* v. *Zoning Board of Appeals*, 147 Conn. 517, 522–23, 162 A.2d 711 (1960); see also *New Haven College, Inc.* v. *Zoning Board of Appeals*, 154 Conn. 540, 543–44, 227 A.2d 427 (1967); *Ferreira* v. *Zoning Board of Appeals*, 48 Conn. App. 599, 603–604, 712 A.2d 423 (1998).

Pursuant to § 14-55; see P.A. 03-265; the board must consider a number of suitability factors: "No [certificate of approval] shall be issued until the application has been approved and such location has been found suitable for the business intended, with due consideration to its location in reference to schools, churches, theaters, traffic conditions, width of highway and effect on public travel." See *New Haven College, Inc.* v. *Zoning Board of Appeals*, supra, 154 Conn. 543 (zoning board of appeals should consider "suitability of the proposed location in view of the proximity of schools, churches, theaters, or other places of public gatherings, inter-

secting streets, traffic conditions, width of the highway and the effect of public travel . . . [and should also indicate] that use of the proposed location will not imperil the safety of the public"). Although the board need not "exalt technicality" in the manner in which it states its findings, it is in the interests of "facilitat[ing] judicial review . . . assur[ing] a more careful administrative consideration, and . . . keep[ing] the administrative agency within the bounds of its functions and powers"; *Dubiel* v. *Zoning Board of Appeals*, supra, 147 Conn. 523; to ensure that the record evinces the board's due consideration of the requisite suitability factors.

Although the suitability factors prioritize public concerns, a variance application does not require the board to consider those same factors. "[T]he authority of a zoning board of appeals to grant a variance . . . requires the fulfillment of two conditions: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 368, 537 A.2d 1030 (1988).

In this case, the board issued only one factual finding, in which it referenced the need to permit the defendant to make reasonable use of the land. Although the board heard evidence that, to some extent, could pertain to suitability, and also issued several conditions of approval that accommodate potential concerns within the neighborhood, the board issued no findings as to the suitability factors enumerated under § 14-55. The reasons that the board provided in its certificate of approval and the conditions provided therein were made with reference to an application for a variance, even though the Pisano application was a matter to which § 14-55 applies. We, therefore, direct the board on remand to consider the Pisano application in accordance with § 14-55.[10]

### III

The plaintiff claims that the court erred in searching beyond the board's stated reason for approval to find a basis for the board's decision. It argues that the court improperly upheld the board's decision on alternative grounds, not stated in the board's decision. In response, the defendant and Pisano Brothers essentially maintain that the court's reasoning and conclusion were sound. We agree with the plaintiff.

"When considering [an] application for [a certificate of approval] . . . [a] zoning board of appeals act[s] as a special agent of the state. . . . When receiving, hearing and eventually deciding whether to grant the application, the [board] does not act pursuant to either the

municipal zoning ordinance or the zoning statutes. . . . Thus, the [board] does not act as the voice of the people . . . . Rather, it acts in a special capacity, serving as the local agency named by the General Assembly to determine whether a certificate of approval should be issued . . . .

"As an agent of the state, the [board] must follow the statutory criteria in determining whether to issue the certificate of approval. . . . [Section] 14-55 sets forth the criteria to be followed by an agency when making its decision. The [board] cannot grant a certificate until the application has been approved and such location has been found suitable for the business intended, with due consideration to its location in reference to schools, churches, theaters, traffic conditions, width of highway, and effect on public travel. . . .

"Because the [board] acts as a special agent of the state in issuing certificates of approval, the trial court's scope of review of the [board's] decision is governed by the [UAPA]." (Citations omitted; internal quotation marks omitted.) *Vicino* v. *Zoning Board of Appeals*, 28 Conn. App. 500, 504–505, 611 A.2d 444 (1992). Section 4-183 (j) provides in relevant part that the trial court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ." "When a [board] states its reasons in support of its decision on the record, the court goes no further, but if the [board] has not articulated its reasons, the court must search the entire record to find a basis for the [board's] decision." (Internal quotation marks omitted.) *Azzarito* v. *Planning & Zoning Commission*, 79 Conn. App. 614, 618, 830 A.2d 827, cert. denied, 266 Conn. 924, 835 A.2d 471 (2003). "Neither this court nor the trial court may retry the case . . . ." (Internal quotation marks omitted.) *Okeke* v. *Commissioner of Public Health*, 304 Conn. 317, 324, 39 A.3d 1095 (2012).

In this case, the board found that strict application of the municipal zoning regulations would deprive the defendant of reasonable use of the land and that granting the Pisano application would be necessary to afford the defendant such reasonable use. Because the board stated its reason for approval, the court was not permitted to search the record for evidence that could support alternative grounds on which the board could have granted the Pisano application. See *Azzarito* v. *Planning & Zoning Commission*, supra, 79 Conn. App. 618.

In the present case, having concluded that § 14-55 applied, the court, thereafter, provided its own inferences as to how the board might have classified and

weighed the public hearing testimony. On the basis of the transcript of the September 14, 2016 public hearing, the court was satisfied that the board had given due consideration to the effect the proposal would have on neighboring residences, and, accordingly, the court concluded that the proposal would constitute a suitable use.

Although the board heard testimony that, to some extent, could pertain to the suitability of operating a business at the given location, the board did not make any findings on that point. When the court reviewed the record to determine whether the evidence, nonetheless, could support a conclusion that the suitability requirement was satisfied, the court was incorrect in substituting its own judgment for that of the board. See id. By reviewing the evidence beyond the board's finding, the court conducted its own de novo review of the Pisano application rather than reviewing the board's decision under the appropriate abuse of discretion standard. Moreover, it was incumbent upon the board to make the requisite suitability findings. See *New Haven College, Inc.* v. *Zoning Board of Appeals*, supra, 154 Conn. 543–44 (concluding that trial court did not err in sustaining plaintiff's appeal where board failed to consider specific suitability factors). We, therefore, conclude that the court employed an incorrect standard of review.

The judgment is reversed and the case is remanded to the trial court with direction to remand the case to the board for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Although § 14-55 is reported as "repealed," effective October 1, 2003, in our official state statute books, the parties dispute whether § 14-55 has been repealed. This matter will be discussed in part II A of this opinion.

[2] The plaintiff advances a number of additional claims that are collateral or inconsequential to our decision. Accordingly, we do not address them. See footnote 10 of this opinion.

[3] The court, in its memorandum of decision, indicated: "[T]he court finds that the [board] properly considered the suitability of locating the Pisano business at 86 Elmcroft Road. The court has reviewed the full transcript of the [board] hearing and subsequent deliberations of the board on September 14, 2016 . . . and finds more than substantial evidence of the board's careful scrutiny of, and resulting conditions on, the Pisano application." (Citation omitted.) The court then referenced instances in which "board members questioned [the defendant] about the scope of his towing operation, the hours of operation and the location and the type of his repair work," the board noted that Pisano Brothers was "not a general towing operation," and that "repairs would take place inside the building." Additionally, the court noted that, during deliberations, the board considered that other businesses within the parameters of M-G zoning "could move in tomorrow" without board approval, considered several conditions of approval that would make the use more "acceptable to neighbors," and that the board even issued several conditions of approval. (Internal quotation marks omitted.) The court concluded that the board's conditions of approval constituted "stark evidence of the careful attention paid by the [board] to the issue of suitability."

[4] General Statutes § 4-184 provides: "An aggrieved party may obtain a review of any final judgment of the Superior Court under this chapter. The

appeal shall be taken in accordance with section 51-197b."

[5] This court has held that compilations of public acts prepared by the Legislative Commissioners' Office do not constitute the actual law of this state: "[T]he compilations of the public acts are not published on the day a law effective on passage is approved by both houses and signed by the governor, allowed to become law without signature of the governor or repassed by a two-thirds majority of the legislature following a gubernatorial veto. . . . [I]t is not the publication of these acts in the [p]ublic [a]cts compilations that makes them effective against members of the public, but their lawful passage by the General Assembly." *Figueroa* v. *Commissioner of Correction*, 123 Conn. App. 862, 870, 3 A.3d 202 (2010), cert. denied, 299 Conn. 926, 12 A.3d 570 (2011).

[6] P.A. 03-265, § 9, provides: "Section 14-55 of the general statutes is repealed and the following is substituted in lieu thereof (Effective October 1, 2003):

"In any town, city or borough the local authorities referred to in section 14-54 shall, upon receipt of an application for a certificate of approval referred to in said section, assign the same for hearing within sixty-five days of the receipt of such application. Notice of the time and place of such hearing shall be published in a newspaper having a general circulation in such town, city or borough at least twice, at intervals of not less than two days, the first not more than fifteen, nor less than ten days, and the last not less than two days before the date of such hearing and sent by certified mail to the applicant not less than fifteen days before the date of such hearing. All decisions on such certificate of approval shall be rendered within sixty-five days of such hearing. The applicant may consent to one or more extensions of any period specified in this section, provided the total extension of any such period shall not be for longer than the original period as specified in this section. The reasons for granting or denying such application shall be stated by the board or official. Notice of the decision shall be published in a newspaper having a general circulation in such town, city or borough and sent by certified mail to the applicant within fifteen days after such decision has been rendered. Such applicant shall pay a fee of ten dollars, together with the costs of publication and expenses of such hearing, to the treasurer of such town, city or borough. No such certificate shall be issued until the application has been approved and such location has been found suitable for the business intended, with due consideration to its location in reference to schools, churches, theaters, traffic conditions, width of highway and effect on public travel. *In any case in which such approval has been previously granted for any location, the local authority may waive the requirement of a hearing on a subsequent application. In addition, the local authority may waive the requirement of a hearing on an application wherein the previously approved location of a place of business is to be enlarged to include adjoining or adjacent property.*" (Emphasis added.) The italicized sentences indicate the portions that were added to the 2003 revision of § 14-55.

[7] Because this amendment to § 14-55 was effective on July 9, 2003, and P.A. 03-265, § 9, took effect on October 1, 2003, we conclude that P.A. 03-265, § 9, replaced the July amendment on October 1, 2003.

[8] The board's certificate of decision stated: "THE BOARD FINDS:

"1. That the aforesaid circumstances of conditions is/are such that the strict application of the provisions of these Regulations would deprive the [defendant] of the reasonable use of such land or building(s) and the granting of the application is necessary for the reasonable use of the land or building(s).

"The [b]oard GRANTS a Motor Vehicle approval of Table II, Appendix A, #55 (Auto Sales Requirements) of the Zoning Regulations in order to allow a Used Car Dealer to operate and be located in an [M-G] zone. This application is exempt from Coastal Area Management Approval, Exemption Number 10C, subject to the following restrictions:

"1. All concerns of the [e]ngineering [bureau] shall be adhered to.

"2. There shall be no more than [six] cars parked in the front.

"3. The [defendant] shall make an effort to contact the [e]ngineering [b]ureau and discuss having [it] add sidewalks to the area.

"4. The hours of operation shall be [8 a.m. to 6 p.m.], Monday through Saturday.

"5. There shall be no vehicular parking between the front property line and the curb on Elmcroft Road.

"6. There shall be one tow truck only on the premises.

"7. There shall be year round evergreen screening around the property.

"8. There shall be no auto body shop or painting of cars on the premises.

"9. All cars belonging to visitors, patrons or employees shall be parked on the site at all times.

"10. No vehicle repairs shall be permitted outside of the building.

"11. No impact tools shall be used outside of the building.

"12. No storage of inoperative vehicles shall be permitted outside of the building.

"13. Outside visible storage of any automotive equipment, including tires, batteries, auto parts, etc., shall not be permitted.

"14. The location, size, and appearance of the building and improvements shall be as per plan depicted on IMPROVEMENT LOCATION SURVEY, dated revised [July 15, 2016], copies of which are on file in the office of the [board].

"The applicant is allowed one year from the effective date of approval in which to obtain a building permit." (Emphasis omitted.)

[9] During the pendency of the plaintiff's appeal to the Superior Court, the board issued a "Revised Certificate of Decision" (revised decision), stating: "NOTE—This corrected Certificate eliminates 'variance' language on the original Certificate of Decision . . . since [the Pisano application] . . . is an application for [certificate of approval] of a Used Car Dealership." This revised decision was submitted to the Superior Court in a supplemental return of record. The record contains no indication as to how this revised decision was made, and it does not appear to have been issued in accordance with the modification procedures set forth in General Statutes § 4-181a et seq. It does not appear that the Superior Court considered the revised decision when rendering its judgment. We also have not considered it in rendering our opinion.

[10] Our conclusion that § 14-55 was not repealed and sets forth the applicable certificate of approval application procedures, in effect, resolves several of the plaintiff's remaining claims. Therefore, we do not reach their merits. See *First Church of Christ, Scientist* v. *Friendly Ice Cream*, 161 Conn. 223, 228–29, 286 A.2d 320 (1971) ("The plaintiffs have pursued several other assignments of error. We need not review these conclusions, however, since they would not affect the final result.").

---