THE STATE OF CONNECTICUT vs. THE SAVINGS BANK OF NEW LONDON.

First Judicial District, Hartford, May Term, 1906.

BALDWIN, HAMERSLEY, HALL, PRENTICE and CASE, JS.

The record of the Public Acts made and kept by the secretary of State is evidence, and ordinarily conclusive evidence, of the existence or nonexistence of an Act of the General Assembly; although in certain proceedings the existence of an Act which does not appear in that record may be established by other evidence.

A bill retained by one house of the General Assembly to await its decision upon a motion to reconsider its action in passing it, is not then in a situation to be "presented" to the Governor for his approval, nor can it be said to have "passed both houses" within the meaning of that expression in Article 4, § 12 of the Constitution of this State.

Pending action by the House of Representatives upon a motion to reconsider its decision in passing a certain bill—which motion was temporarily laid upon the table—the bill, through the inadvertence and mistake of the clerk, was gathered up with others and sent to the Governor who endorsed his approval thereon. Later in the same day, which was the last day of the session, the House, on learning of the mistake, recalled the bill and the Governor cancelled his endorsement of approval, and upon the return of the bill to the House its earlier action was reconsidered and the measure indefinitely postponed, shortly after which the Legislature adjourned *sine die*. *Held* that the bill never became a law.

Courts are not warranted in setting aside, as void, action of a legislative body in respect to a matter clearly within its power, merely because that body may have violated or departed from its own rules of procedure. Such rules are the servants of the legislative body and are subject to its own independent authority.

Argued May 1st—decided June 8th, 1906.

AMICABLE SUIT to determine whether or not, upon the facts stated in the complaint, a certain legislative bill reducing the tax upon savings-banks became a law of the State,

brought to and reserved by the Superior Court in Hartford County, *Ralph Wheeler, J.*, for the advice of this court. *Judgment advised for plaintiff.*

In accordance with the provisions of § 2422 of the General Statutes, as amended by chapter 189 of the Public Acts of 1903, there became due from the defendant (The Savings Bank of New London) and payable by it to the State on January 20th, 1906, a tax amounting to the sum of $10,516.01. The defendant thereafter paid to the State the sum of $7,678.73, claiming said sum to be the whole · amount then legally due and payable by it to the State as a tax. This claim was unfounded, unless a certain bill for a public act, known as House Bill No. 252, which had been introduced at the General Assembly at its January session, 1905, had legally become a public act. This bill was intended to amend § 2422, as amended by chapter 189 of the Public Acts of 1903, and if it became in fact a public act that Act amended said section, and the section thus amended authorizes a tax upon the defendant of the amount paid by it instead of a tax of the amount authorized by the section if not thus amended, and the difference between these two amounts, to wit, the sum of $2,837.28, was not due and payable from the defendant to the State.

This proceeding is an amicable suit under the provisions of § 955 of the General Statutes, between the State as plaintiff and the Savings Bank of New London as defendant, to determine whether the State shall have judgment against the defendant for the sum of $2,837.28, claimed by the State as the unpaid balance of the tax upon the defendant due and payable January 20th, 1906, under the provisions of § 2422 as then in force.

The material facts agreed upon by the parties, in addition to those above stated, are in substance as follows : At the January session, 1905, of the General Assembly, on May 25th, a bill entitled " Bill for an Act amending section 2422, known as House Bill No. 252," was introduced in the House of Representatives and tabled for calendar and printing.

The secretary of State has not recorded the bill in question as one of the laws of the State. Upon the bill are the following endorsements:——

State of Connecticut, House of Representatives, May 25, 1905. Tabled for Calendar & Printing, John A. Spafford, Clerk.

State of Connecticut, House of Representatives, June 6, 1905. Rejected, John A. Spafford, Clerk.

State of Connecticut, Senate, June 8, 1905. Tabled for Calendar, Alfred C. Baldwin, Clerk.

State of Connecticut, Senate, June 9, 1905. Order of the day, Wednesday, June 14, 12 o'clock M., Alfred C. Baldwin, Clerk.

State of Connecticut, Senate, June 14, 1905. Passed, Alfred C. Baldwin, Clerk.

State of Connecticut, House of Representatives, June 20, 1905. Tabled for foot of Calendar, John A. Spafford, Clerk.

State of Connecticut, House of Representatives, June 22, 1905. Insists & Asks Com. of Confer. Messrs. Holcomb & Fosdick, John A. Spafford, Clerk.

State of Connecticut, Senate, June 27, 1905. Request granted, Senator Bicknell appointed, Alfred C. Baldwin, Clerk.

State of Connecticut, House of Representatives, July 19, 1905. Reconsidered & Passed, Motion to reconsider, Motion tabled, John A. Spafford, Clerk.

~~Approved July 19, 1905.~~

~~Henry Roberts,~~

~~Governor.~~

State of Connecticut, House of Representatives, July 19, 1905. Later, Reconsidered and indefinitely postponed, John A. Spafford, Clerk.

The General Assembly adjourned *sine die* July 19th, 1905. The words " Motion to reconsider, motion tabled," appearing in the ninth endorsement by the clerk, were, at the time of the motions, made and kept by the clerk of the House in the form of memoranda, and were made a part of

this endorsement by the clerk after the endorsement of approval by the Governor with the erasing lines had been affixed to the bill.    It is the practice of the clerks of the House to endorse on a bill with a rubber stamp such action as the House takes on a bill at the time of the action, but when the action is " to reconsider," or " to table a motion to reconsider," the clerks, having no stamp wherewith to endorse such action, follow a practice of making written memoranda of such action on a paper other than the bill.

The last endorsement was made on the bill by the clerk on the 20th of July, from memoranda made by the clerk at the time of the action set forth in the endorsement.

House Rule No. 8 orders the clerk to keep a journal of the House and to enter thereon a record of each day's proceedings.    The memoranda of the clerk of the House, from which the journal of the House is made, and the journal of the House, embody the following facts, all occurring during the session of the House and before adjournment on July 19th: In the morning the House voted to reconsider and concur with the Senate in the passage of House Bill No. 252.    After recess it was moved in the House to reconsider the action of the House in passing the bill.    The motion to reconsider was tabled.    At the time this motion to reconsider was made and tabled, the bill was in the House and in the hands of the Speaker *pro tem.*    The bill remained in the House on the clerk's desk for some time after the motion to reconsider had been tabled.    Later in the day it came to the Governor in the following manner: The clerk of engrossed bills and the deputy-secretary of State went to the clerk of the House for such bills as were ready for transmission to the Governor.    The clerk of the House passed certain bills, including the bill in question, to the clerk of engrossed bills, who handed them to the deputy-secretary of State, and the deputy-secretary of State placed them in the hands of the Governor, who shortly afterward approved the bill (erased endorsement) and transmitted it so approved to the secretary of State.    Subsequently it was moved in the House to take the motion

State *v.* Savings Bank of New London.

to reconsider from the table and to reconsider the action of the House in passing the bill. The Speaker announced that the bill was in the office of the Governor. On oral motion a committee was appointed by the House to recall the bill. The committee found the bill in the office of the secretary of State, approved as above set forth, took it to the Governor and informed him that the bill had been presented to him by mistake. The Governor thereupon caused his approval to be erased as appears in the endorsement. The committee then brought the bill into the House. It was then moved in the House to take from the table the motion to reconsider the bill. The motion prevailed. The action of the House in passing the bill was then reconsidered and by vote of the House the bill was indefinitely postponed. All the above acts of the clerk of engrossed bills, the clerk of the House, and the deputy-secretary of State, were done in good faith in what they believed to be the honest discharge of duty and with the purpose of legally and properly forwarding the business of the General Assembly; the act of the clerk of the House in parting with the physical possession of the bill was an inadvertence, arising from and due to the fact that in the press of business and confusion attendant on the closing day of the session the bill was accidentally gathered up with bills which were ready for the Governor's consideration, and was accidentally among the bills which were taken to the Governor.

As shown by the journal of the House on June 15th, the rule requiring the clerk of the House to hold bills and resolutions one day for reconsideration was suspended for the remainder of the session.

The State claimed that upon the facts above stated there is still due from the defendant to the State the sum of $2,837.28. The defendant claimed that upon the facts above stated House Bill No. 252 became a law of the State, amending § 2422, and that the defendant has paid the State all the tax that is due under the provisions of said section as thus amended.

At the request of the parties the questions of law arising upon the foregoing facts, and as to what judgment shall be rendered therein, were reserved for the advice of this court.

*William A. King*, Attorney-General, and *Herbert O. Bowers*, for the plaintiff.

*J. Henry Roraback* and *Walter C. Noyes*, with whom was *Alfred Coit*, for the defendant.

HAMERSLEY, J. The Constitution provides that a secretary shall be chosen and that "he shall have the safe keeping and custody of the public records and documents, and particularly of the Acts, Resolutions and Orders of the General Assembly, and record the same." Article Fourth, § 18. A few months after the adoption of the Constitution, the General Assembly appointed a committee to examine the statute laws and recommend such alterations and provisions as should be necessary and expedient to render the statutes conformable to the Constitution. The Revision adopted in pursuance of the report of this committee provides "that all bills for public acts or laws, which shall have been passed by both houses of the general assembly, shall, as soon as passed, be carefully and accurately engrossed, . . . and such engrossed bills shall be signed by the speaker of the house of representatives, and by the president of the senate, and shall then be presented, by the secretary, to the governor, for his approbation; and the bills thus signed by the speaker of the house, and the president of the senate, which shall be approved by the governor, and if not approved by him, shall otherwise, agreeably to the constitution of this state, become laws, shall be public acts or laws, and, as such, be recorded and kept on file; and the secretary, at the end of each session, shall cause such acts or laws to be published, from correct copies, by him made for that purpose." Rev. 1821, p. 257. This statutory direction as to the performance by the secretary of his constitutional duty to keep safely and record

the Acts of the General Assembly, has, with some modifications of detail, ever since remained in force. General Statutes, §§ 99, 106. The record of the Public Acts of the General Assembly made and kept by the secretary is evidence, and ordinarily the conclusive evidence, of the existence or nonexistence of an Act of the General Assembly; *Eld* v. *Gorham*, 20 Conn. 8, 16; although in certain proceedings the existence of an Act which does not appear in that record may be established by other evidence. *State* v. *South Norwalk*, 77 Conn. 257, 265, 58 Atl. 759.

The defendant in this proceeding denies the validity of a tax imposed by the provisions of § 2422 of the General Statutes, on the ground that this section has been amended by a public act approved July 19th, 1905, which the secretary has neglected and refused to record. In support of this claim, there is produced in evidence a file of the General Assembly entitled "Bill for an Act amending § 2422, known as House Bill No. 252," with the action of the Senate and House of Representatives relating to this bill as recorded by their respective clerks endorsed thereon. This file, as well as all files and documents in possession of the General Assembly, came, upon its final adjournment, by force of the Constitution, into the custody of the secretary to be by him safely kept. It appears by the endorsements on this file, that House Bill No. 252 did not finally pass both houses, but was on July 19th, 1905, and before the adjournment of the General Assembly on that day, indefinitely postponed by the House of Representatives. It is true that the words and lines "Approved July 19, 1905, Henry Roberts, Governor," appear on the file after the ninth and before the tenth endorsement by the clerk of the House, but it is a natural inference from the record of the clerks appearing on the file, that while the bill was in the possession of the House it was by the order of the House held to await the action of the House upon a motion entertained by it to reconsider its action in passing the bill; that while thus awaiting further action the bill came, without authority of the House, to the hands of the Gov-

ernor, who wrote the words " Approved," etc., through mistake ; and that the House, subsequently having the bill in its lawful possession, reconsidered its former action and indefinitely postponed the bill. This inference is beyond doubt established as true by the journal of the House. The House is required by the Constitution to keep a journal of its proceedings, and this record of the proceedings of the House in relation to House Bill No. 252 is referred to in the agreed statement of facts. The following are extracts from the record of proceedings on July 19th, 1905 :—

" House Bill No. 252 (See House Journal, June 22d). The report of the committee of conference, on a bill entitled ' An Act amending an Act concerning Tax on Savings Banks,' recommending that the House reconsider its former action in rejecting the substitute bill, and concur with the Senate in the passage of the substitute bill, was received. The House voted to reconsider its former action in rejecting the substitute bill. Mr. Holcomb of Torrington moved the passage of the substitute bill. The substitute bill was discussed by Messrs. Holcomb of Torrington, Fosdick of Lyme, Atwood of Watertown, Southwick of Cornwall, Blodgett of Canaan, Warner of Woodbridge, and Griswold of Guilford. On motion of Mr. Hall of Willington, the previous question was ordered. The substitute bill was then passed, and the report of the committee accepted.

" The vote was as follows :

" Whole number voting,         .      .      .      .      216
" Necessary for passage,      .      .      .      .      . 109
" Number voting for passage,        .      .      .      110
" Number voting against passage,        .      .      . 106

" (At 1 P. M. a recess was taken until 2 P. M.) The House was called to order at 2 o'clock P. M., by Mr. Alcorn of Suffield. House Bill No. 252 (See House Journal of forenoon session, July 19th.) Mr. Marsh of Waterbury moved that the House reconsider its action in passing sub-

State *v.* Savings Bank of New London.

stitute for House Bill No. 252, ' An Act amending an Act concerning Tax on Savings Banks.' The motion was discussed by Messrs. Fosdick of Lyme and Southwick of Cornwall. Upon motion of Mr. Clark of Hartford, the House then voted to lay the motion to reconsider upon the table. At that time the substitute bill was in the possession of the House, upon the desk of the Speaker. . . . Substitute for House Bill No. 252, ' An Act amending an Act concerning Tax on Savings Banks.' Mr. Holcomb of Torrington moved to take the substitute bill from the table. The Speaker stated that the substitute bill was not in the possession of the House and that he had been informed that it was in the office of the Governor. Mr. Holcomb of Torrington then moved that a committee be appointed to secure the substitute bill. The motion prevailed and Messrs. Holcomb of Torrington, Warner of Woodbridge, and Kenealy of Stamford were appointed as such committee. The committee retired and soon returned with the substitute bill. On motion of Mr. Holcomb of Torrington, the motion to reconsider the substitute bill was then taken from the table. The motion to reconsider the action of the House in passing the substitute bill then prevailed. On motion of Mr. Holcomb of Torrington, the substitute bill was indefinitely postponed." House Journal, 1905, pp. 1505, 1532, 1553, 1554.

The record evidence in respect to House Bill No. 252 may be thus summarized: It shows (1) by the record of the secretary, made and kept in pursuance of the Constitution and laws, that House Bill No. 252 did not become a public act; (2) by the original file or bill, with the record of the action of the two Houses endorsed thereon by their respective clerks, that the bill was not finally passed by both Houses, but was on July 19th indefinitely postponed by the House of Representatives; (3) by the journal or record of the proceedings of the House, kept in pursuance of the Constitution and laws, that the House, while the bill was in its possession and on the desk of the Speaker, in entertaining a motion to reconsider its action

upon the bill and ordering that motion to lie upon the table, directed that the bill be held to await its further action upon the pending motion to reconsider, and upon discovering that the bill had been removed without its authority appointed a committee to secure the bill; that the committee secured the bill and returned with it to the House, and thereupon the House ordered the motion to reconsider the bill to be taken from the table; that its action in passing the bill be reconsidered and that the bill be indefinitely postponed.

This record evidence, by itself or in connection with evidence not of record appearing in the agreed statement of facts, is conclusive as to the action of the two houses of the General Assembly in respect to House Bill No. 252. The bill had not at any time during the session of the General Assembly, nor at its adjournment without day, finally passed both Houses.

The defendant, however, contends that inasmuch as it is admitted that the Governor did, while the House was in session, actually write his approval upon the back of the bill, and did thereupon actually send the bill to the secretary, the bill as soon as it reached the secretary or passed the door of his office was made at once, by force of a self-executing declaration of the Constitution, a law which could not be repealed or made not a law by the subsequent action of the Governor in erasing the approval written by him, and of the House of Representatives in indefinitely postponing the bill. The self-executing declaration of the Constitution upon which the defendant must rely is contained in § 1 of Article Third and § 12 of Article Fourth, and is as follows: "The legislative power of this state shall be vested in two distinct houses or branches; the one to be styled THE SENATE, the other THE HOUSE OF REP-RESENTATIVES, and both together THE GENERAL ASSEMBLY. The style of their laws shall be, *Be it enacted by the Senate and House of Representatives in General Assembly Convened.*" "Every bill which shall have passed both houses of the General Assembly, shall

be presented to the Governour. If he approves, he shall sign and transmit it to the Secretary." It is evident that no bill which depends for its enactment as a law upon its passage by both houses, its presentation to the Governor and approval by him, can become a law by the self-executing force of this provision until it is " approved " by the Governor, and that no bill is " approved " by the Governor until it has been " presented " to him for his approbation, and that no bill can be " presented " to the Governor unless it has " passed " both Houses of the General Assembly. The fact, therefore, that the Governor actually wrote his approval on the bill and sent it to the secretary, is immaterial, unless at the time of his doing this the bill had " passed both houses." It is clear from the record (and in this respect all admitted facts are consistent with the record), that directly after the passage of a vote concurring with the Senate in passing the bill, and while the bill was in the possession of the House and on the desk of its Speaker, the House had entertained a motion to reconsider its action, and that at the time the Governor wrote his approval on the bill this motion was, by its order, pending in the House, and its final action on the bill was suspended.

We think that a bill in this situation has not " passed both houses," within the meaning of the constitutional provision. This being so, it is immaterial whether the clerk of the House in accidentally and inadvertently passing the bill to the clerk of engrossed bills, and that clerk in handing it to the deputy-secretary of State, and the deputy-secretary of State in placing it in the hands of the Governor, acted in good faith or not. The bill was in fact taken from the possession of the House before it had completed its deliberations upon its passage, and such abstraction, as affecting the action of the House subsequently taken in securing possession of and indefinitely postponing the bill, was as inoperative as if the bill had been intentionally taken from the clerk's desk by a stranger and by him placed in the hands of the Governor.

The defendant further contends that the bill had finally passed the House, because in entertaining a motion to reconsider its action in passing the bill, in ordering that motion to lie upon the table, in sending its committee to secure the bill taken from its possession without its authority, and in reconsidering its vote and indefinitely postponing the bill, the House acted in violation of the rules and parliamentary law it had adopted to facilitate the orderly conduct of its business.

There being no claim of a violation of any constitutional restriction, we cannot pass upon the regularity of these proceedings. The power of the House, directly after the passage of a bill, and on the day of its passage, to suspend the operation of that vote, to reconsider the vote, and to take different action, cannot be questioned. The Constitution declares that each House shall determine the rules of its own proceedings and shall have all powers necessary for a branch of the legislature of a free and independent State. Rules of proceedings are the servants of the House and subject to its authority. This authority may be abused, but when the House has acted in a matter clearly within its power, it would be an unwarranted invasion of the independence of the legislative department for the court to set aside such action as void, because it may think that the House has misconstrued or departed from its own rules of procedure.

Since the adoption of the Constitution there has been in force a statute declaring the proper steps to be taken in order to constitute the presentation of a bill which has passed both houses to the Governor for his approval. The bill as soon as passed must be engrossed, and the engrossed bill attested by the signature of the Speaker of the House of Representatives and of the President of the Senate; and thus attested must be presented to the Governor by the secretary. In 1877 a further provision was enacted: that after the rising of the General Assembly, bills which had passed both houses but had not been engrossed should be, in their unengrossed form, presented by the secretary

to the Governor for his approval, and upon his approval should be engrossed and attested in the same manner and with the same effect as if done during the session of the General Assembly. Rev. 1821, p. 257 ; Public Acts of 1859, pp. 4, 21 ; id. 1877, p. 180 ; Special Laws, 1880–1887 ; Rev. 1888, §§ 318, 415, 417 ; Rev. 1902, §§ 36, 40, 106. See also State Records for 1816–1822, in the office of secretary of State, Vols. 12, 13, 14.

Whether or not a bill which shall have passed both houses on the last day of the session can properly, in its unengrossed form, be presented to the Governor for approval before the rising of the General Assembly, or if such bill is in fact handed to the Governor while the General Assembly is in session and he then in fact endorses his approval thereon, whether or not his act in so doing becomes forthwith operative as the legal approval of a bill which has passed both houses and been duly presented to the Governor, are questions suggested by the facts and claims in this case, but which we are not now called upon to consider. House Bill No. 252 was not presented to the Governor, because at the time it came into his hands it had not passed both houses of the General Assembly.

The Superior Court is advised to render judgment that the defendant pay the State the sum of $2,837.28.

In this opinion the other judges concurred.