******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ONE ELMCROFT STAMFORD, LLC *v.* ZONING BOARD OF APPEALS OF THE CITY OF STAMFORD ET AL.
## (SC 20393)

Robinson, C. J., and D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to statute ((Rev. to 2003) § 14-55), no certificate of approval for a license to deal in or to repair motor vehicles "shall be issued until the application has been approved and such location has been found suitable for the business intended . . . ."

Pursuant further to statute (§ 2-30b (a)), when two or more legislative acts passed during the same legilsative session "amend the same section of the general statutes . . . and reference to the earlier adopted act is not made in the act passed later, each amendment shall be effective except in the case of irreconcilable conflict, in which case the act which was passed last . . . shall be deemed to have repealed the irreconcilable provision contained in the earlier act . . . ."

The defendants P Co. and A filed an application with the Department of Motor Vehicles seeking a license to operate a used car dealership in the city of Stamford, and A filed an application with the defendant zoning board of appeals seeking a certificate of approval for the proposed location of the dealership. The board held a public hearing and approved the application subject to various conditions. The plaintiff filed an administrative appeal from the board's decision, claiming that the board improperly failed to conduct the suitability analysis mandated by § 14-55. The trial court rendered judgment denying the administrative appeal, concluding that the board was required to and did consider the suitability of the propsed location in accordance with § 14-55. The plaintiff appealed to the Appellate Court, claiming, inter alia, that the board failed to conduct the suitability analysis mandated by § 14-55 and that the trial court had improperly searched beyond the board's stated findings to cure that deficiency. The Appellate Court reversed the trial court's judgment, concluding that, pursuant to § 2-30b (a), two 2003 amendments to § 14-55, Nos. 03-184 and 03-265 of the 2003 Public Acts, the former of which expressly repealed § 14-55 without providing a replacment, the latter of which purported to amend § 14-55 by adding two new sentences, and neither of which referenced each other, constituted irreconcilable amendments and that P.A. 03-265 should be given effect because it was passed by the General Assembly two days after P.A. 03-184 was passed. On the granting of certification, P Co. and A appealed to this court, claiming that the Appellate Court incorrectly concluded that § 14-55 was not repealed in 2003. *Held* that the Appellate Court incorrectly concluded that § 14-55 had not been repealed: the biennial codifications compiled by the Legislative Commissioners' Office, and thereafter ratified by the General Assembly, constituted an authoritative source for the statutory law of this state at the time those codifications went into effect, it was undisputed that the General Assembly adopted, ratified, confirmed and enacted the 2005 revision of the General Statutes and that § 14-55 was listed therein as having been repealed by P.A. 03-184, this same language was presented to the General Assembly and was ratified in seven successive statutory revisions, and, accordingly, this court was unable to conclude that the plaintiff satisfied its burden of proving that these entries were the result of a mere editorial error and should simply be ignored; moreover, other jurisdictions and secondary authorities provide support for the position that an attempt to amend a previously repealed statute is generally ineffective, and the Appellate Court improperly applied § 2-30b (a) to resolve the conflict between the two amendments, as that statute applies only when two or more acts amend the same statute, and P.A. 03-184 did not amend § 14-55, as that term is ordinarily defined, but, rather, eliminated it in its entirey.

Argued October 21, 2020—officially released January 25, 2021*

Appeal from the decision of the named defendant granting the application of the defendant Pasquale Pisano for approval of the location of a used car dealership on certain real property, brought to the Superior Court in the judicial district of New Britain and transferred to the judicial district of Stamford-Norwalk, where the case was tried to the court, *Hon. Taggart D. Adams*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment denying the plaintiff's appeal, from which the plaintiff appealed to the Appellate Court, *Sheldon*, *Elgo* and *Lavery*, *Js.*, which reversed the judgment of the trial court and remanded the case to that court with direction to remand the case to the named defendant for further proceedings, and the defendant Pasquale Pisano et al., on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Gerald M. Fox III*, for the appellants (defendant Pasquale Pisano et al.).

*Jeffrey P. Nichols*, with whom were *Amy E. Souchuns* and, on the brief, *John W. Knuff*, for the appellee (plaintiff).

*William Tong*, attorney general, *Clare E. Kindall*, solicitor general, and *Jane R. Rosenberg*, assistant attorney general, filed a brief for the state of Connecticut as amicus curiae.

*Opinion*

KAHN, J. The dispositive issue in this appeal is whether the suitability analysis mandated by General Statutes (Rev. to 2003) § 14-55[1] is still required in order to obtain a certificate of approval of the location for a used car dealership, notwithstanding the fact that subsequent revisions of the General Statutes list that provision as having been repealed. The plaintiff, One Elmcroft Stamford, LLC, filed an administrative appeal challenging the decision of the defendant Zoning Board of Appeals of the City of Stamford to grant a certificate of approval of the location for a used car dealership run by the defendants Pasquale Pisano and Pisano Brothers Automotive, Inc.[2] After the trial court rendered judgment denying the administrative appeal, the plaintiff appealed to the Appellate Court, which reversed the trial court's judgment. See *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, 192 Conn. App. 275, 277–78, 217 A.3d 1015 (2019). The defendants, following our grant of certification, now appeal to this court. On appeal, the defendants claim that the Appellate Court incorrectly concluded that § 14-55 continues to carry the force of law. In response, the plaintiff contends that the Appellate Court correctly concluded that § 14-55 was not repealed by a sequence of contradictory public acts relating to that statute that were passed by the legislature in 2003. For the reasons that follow, we conclude that § 14-55 has been repealed and, accordingly, reverse the judgment of the Appellate Court.

We begin with a brief review of the various statutes and public acts passed by our legislature that are relevant to our consideration of this appeal. General Statutes (Rev. to 2003) § 14-54 provides in relevant part: "Any person who desires to obtain a license for dealing in or repairing motor vehicles shall first obtain . . . a certificate of approval of the location for which such license is desired from the selectmen or town manager of the town, the mayor of the city or the warden of the borough, wherein the business is located or is proposed to be located, except in any city or town having a zoning commission and a board of appeals, in which case such certificate shall be obtained from the board of appeals. . . ."

Standards related to the issuance of such certificates were originally outlined by the legislature in § 14-55. General Statutes (Rev. to 2003) § 14-55 provides in relevant part: "In any town, city or borough the local authorities referred to in section 14-54 shall, upon receipt of an application for a certificate of approval referred to in said section, assign the same for hearing within sixty-five days of the receipt of such application. . . . *No such certificate shall be issued until the application has been approved and such location has been found suitable for the business intended, with due consideration to its location in reference to schools, churches,*

*theaters, traffic conditions, width of highway and effect on public travel.*" (Emphasis added.)

Two public acts passed by the General Assembly during the 2003 legislative session relating to § 14-55 are at issue. First, No. 03-184, § 10, of the 2003 Public Acts (P.A. 03-184), which passed the second house of the legislature on June 2, 2003, expressly repealed § 14-55 without providing a replacement.[3] Second, No. 03-265, § 9, of the 2003 Public Acts (P.A. 03-265), which passed the second house of the legislature only two days later, purported to amend § 14-55 by appending two new sentences to the previously existing language.[4] Neither P.A. 03-184 nor P.A. 03-265 referred to the other, and both were assigned an effective date of October 1, 2003.[5] The legislature passed no further public acts with respect to § 14-55 after 2003.[6]

In 2005, the Legislative Commissioners' Office, pursuant to the legislative directive set forth in General Statutes § 2-56 (g), completed a biennial revision of our state's laws that cited the public acts previously described in this opinion and expressly listed § 14-55 as repealed. This revision was ultimately ratified by the legislature. See General Statutes (Rev. to 2005) § 14-55; see also Public Acts 2005, No. 05-12, § 1 (P.A. 05-12) ("Volumes 1 to 13, inclusive, of the general statutes of Connecticut, revised to 1958, consolidated, codified, arranged and revised to January 1, 2005, by the legislative commissioners under the provisions of subsection (g) of section 2-56 of the general statutes and published under the title 'The General Statutes of Connecticut, Revision of 1958, Revised to January 1, 2005', including the consolidation, codification, arrangement and revision of the public acts of the state from 1959 through 2004, inclusive, *are adopted, ratified, confirmed and enacted.*" (Emphasis added.)).[7]

Against this legislative backdrop, we turn to the following relevant facts and procedural history relating to this particular case. On June 1, 2016, the defendants filed an application with the Department of Motor Vehicles seeking a license to operate a used car dealership at 86 Elmcroft Road in the city of Stamford. On July 14, 2016, Pisano also filed an application with the board seeking a certificate of approval of the location for the dealership as required by statute. See General Statutes (Rev. to 2015) § 14-54, as amended by Public Acts 2016, No. 16-55, § 4. The board held a public hearing on September 14, 2016. Although two neighboring residents appeared at the hearing to voice their opposition to the request, the plaintiff, a commercial entity that owns an adjacent parcel, did not appear before the board to oppose the application. After that hearing, the board voted unanimously to approve that application with various conditions.[8]

The plaintiff subsequently commenced this administrative appeal pursuant to General Statutes § 14-57 and

pursuant to General Statutes § 4-183 of the Uniform Administrative Procedure Act, claiming, inter alia, that the board improperly failed to conduct the suitability analysis mandated by § 14-55 in granting a certificate for the approval of the location. After briefing and oral argument from the parties, the trial court issued a memorandum of decision, denying the plaintiff's appeal. Although the trial court agreed with the plaintiff that the board was required to consider the suitability factors set forth in § 14-55, it concluded, after its own examination of the record, that the board had given due consideration to the suitability of the defendants' proposed use. The plaintiff subsequently appealed from the trial court's judgment to the Appellate Court, claiming, inter alia, that the board had failed to conduct the suitability analysis mandated by § 14-55 and that the trial court had improperly searched beyond the board's stated findings to cure that deficiency. *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 192 Conn. App. 278.

The Appellate Court first looked to General Statutes § 2-30b (a) to resolve the conflict between P.A. 03-184 and P.A. 03-265. Id., 285–87. Section 2-30b (a) provides in relevant part: "When two or more acts passed at the same session of the General Assembly amend the same section of the general statutes, or the same section of a public or special act, and reference to the earlier adopted act is not made in the act passed later, each amendment shall be effective except in the case of irreconcilable conflict, in which case the act which was passed last in the second house of the General Assembly shall be deemed to have repealed the irreconcilable provision contained in the earlier act . . . ." Citing *State* v. *Kozlowski*, 199 Conn. 667, 676, 509 A.2d 20 (1986), the Appellate Court concluded that § 2-30b "applies to all acts which expressly change existing legislation . . . ." (Internal quotation marks omitted.) *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 192 Conn. App. 287. The Appellate Court concluded that, pursuant to § 2-30b, P.A. 03-184 and P.A. 03-265 were irreconcilable amendments to the same statute and that P.A. 03-265 should be given effect because it was passed by the second house of the General Assembly two days after P.A. 03-184. Id.

After reaching this conclusion, the Appellate Court turned to the question of whether the board had given "due consideration to [the proposed] location in reference to schools, churches, theaters, traffic conditions, width of highway and effect on public travel" as required by § 14-55. (Internal quotation marks omitted.) Id., 292. The Appellate Court answered that question in the negative, concluding that, "[a]lthough the board heard evidence that, to some extent, could pertain to suitability, and also issued several conditions of approval that accommodate[d] potential concerns within the neighborhood, the board issued no findings

as to the suitability factors enumerated under § 14-55."[9] Id., 293. As a result, the Appellate Court reversed the trial court's judgment and remanded the case with direction to sustain the plaintiff's appeal. Id., 293, 296. We thereafter granted the defendants' petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that . . . § 14-55 was not repealed in 2003?" *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, 333 Conn. 936, 218 A.3d 594 (2019).[10]

In the present appeal, the defendants claim that the Appellate Court erred in deciding that § 14-55 was not repealed in 2003. Specifically, the defendants argue that the biennial revision of the General Statutes compiled by the Legislative Commissioners' Office and ratified by the General Assembly should be viewed as an authoritative source of the statutory law of this state. The defendants also argue that the decision to list § 14-55 as repealed was, on its merits, correct because nothing was left for P.A. 03-265 to amend following the express repeal of § 14-55 in P.A. 03-184. Finally, the defendants posit that § 2-30b cannot be applied to this case because P.A. 03-184 repealed, rather than amended, § 14-55.

In response, the plaintiff asserts that the decision to list § 14-55 as repealed in the 2005 revision of the General Statutes was an "editorial error" by the Legislative Commissioners' Office. Specifically, the plaintiff argues that, because P.A. 03-184 and P.A. 03-265 are in irreconcilable conflict, § 2-30b requires that the latter be given effect and that, even if § 2-30b did not apply, common-law rules of statutory construction require the same result. The plaintiff contends that decisions made by the Legislative Commissioners' Office do not carry the force of law because their actions are not those of the legislators. Finally, the plaintiff argues that the legislature's ratification of the biennial revision prepared by the Legislative Commissioners' Office should have no bearing on the validity of § 14-55 because ratification is pro forma and was not undertaken by the legislature with the conflict between P.A. 03-184 and P.A. 03-265 in mind.

We begin by noting the applicable standard of review. The parties agree that the discrete issue now before this court—the continued vitality of § 14-55—presents a question of law over which our review is plenary. See, e.g., *Redding* v. *Georgetown Land Development Co., LLC*, 337 Conn. 75, 82, 251 A.3d 980 (2020) ("[q]uestions of statutory construction are matters of law subject to plenary review"); *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 594, 181 A.3d 550 (2018) ("[t]he interpretation and application of a statute . . . involves a question of law over which our review is plenary" (internal quotation marks omitted)). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the

legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45–46, 213 A.3d 1110 (2019).

Over one century of case law demonstrates that this court has consistently afforded deference to the formal publication of statutes by the legislature. The subject was first addressed by this court in *Eld* v. *Gorham*, 20 Conn. 7 (1849). In that case, we examined a statutory provision relating to the competency of witnesses that, according to a subsequent revision of the General Statutes, took effect on June 27, 1848. Id., 14. The underlying public act, by contrast, specified that the statutory provision would take effect on June 28, 1848. Id. The defendant, who sought application of the statute and argued in favor of the earlier date, claimed that the revision constituted authoritative evidence of the existence and validity of the laws contained therein. Id. The plaintiff responded by urging this court to look into the proceedings of the entity then charged with the task of codification, the committee of revision, and to determine whether it had exceeded the powers conferred on it by the legislature. Id.

This court observed that, by ratifying the revised statutes, the legislature had indicated an intent to treat the materials contained within that revision as "the only public statute laws of this [s]tate . . . ." Id., 15. *Eld* held, in no uncertain terms, that "[w]hen . . . the legislature constituted such certified copy an authentic record of the statute laws of the state, it has the same force and effect as if it were in truth a portion of the original records of the proceedings of that body. As such, it imports absolute verity; is, in itself, conclusive evidence of what it states; and is therefore entitled to implicit credit." Id., 16. Thus, the court concluded, "we are bound to consider the copy of the published statutes . . . as containing the veritable and only statute laws of the state, when the present action was tried; and that therefore, it is not competent for us, in this suit and in this mode, to permit any enquiry as to the propriety of the course taken by the committee of revision, or the secretary of state, respecting the publication or authentication of those statutes." Id., 16–17.

Subsequent cases, although allowing limited inquiries into the validity and scope of various statutory enact-

ments, provide additional support for the deference to be afforded to published statutes. See *State* v. *South Norwalk*, 77 Conn. 257, 264–65, 58 A. 759 (1904) (noting that presence of statute in bound publication of public acts "is in ordinary cases conclusive"); *State* v. *Savings Bank of New London*, 79 Conn. 141, 147, 64 A. 5 (1906) ("The record of the Public Acts of the General Assembly made and kept by the [s]ecretary is evidence, and ordinarily the conclusive evidence, of the existence or nonexistence of an [a]ct of the General Assembly . . . . Although in certain proceedings the existence of an [a]ct which does not appear in that record may be established by other evidence." (Citation omitted.)); *State* v. *McGuire*, 84 Conn. 470, 478, 80 A. 761 (1911) (reaffirming general principle that statutory revision "is to be held to contain the entire statute law of the [s]tate in force when it went into effect"); *Leete* v. *Griswold Post No. 79, American Legion*, 114 Conn. 400, 406, 158 A. 919 (1932) (noting that "presumption against repeal by implication . . . [is] augmented when . . . both [statutory] provisions have been retained in a general revision of the statutes, and by the [reenactment] of such revision established as parts of the entire statute law of the [s]tate").

Although these decisions are not of recent vintage, neither the Appellate Court nor the parties to the present case have cited any authority that would cause us to reconsider the general proposition that, when our legislature has chosen to adopt formal procedures for aggregating and publishing its own work, the resulting product is entitled to significant weight.[11] We therefore conclude, consistent with this precedent, that the biennial codifications compiled by the Legislative Commissioners' Office pursuant to § 2-56 (g) and thereafter ratified by the legislature continue to constitute an authoritative source for the statutory law of this state at the time they went into effect. The contents of such revisions are presumptively correct, and a party seeking to overcome that presumption bears the burden of proving its infirmity. See 82 C.J.S. 401–402, Statutes § 323 (2009) ("[i]t is incumbent on those who assert that the codifiers went beyond their commissions to prove it"); cf. 1 U.S.C. § 204 (a) (2018) ("[t]he matter set forth in the edition of the Code of Laws of the United States current at any time shall . . . establish prima facie the laws of the United States, general and permanent in their nature, in force on the day preceding the commencement of the session following the last session the legislation of which is included").

It is undisputed that the legislature "adopted, ratified, confirmed and enacted" the 2005 revision of the General Statutes; Public Acts 2005, No. 05-12, § 1; and that § 14-55 is listed therein as having been repealed by P.A. 03-184 on October 1, 2003. This same language has been presented to the legislature and has been ratified in seven successive statutory revisions. See footnote 7 of

this opinion. For the reasons that follow, we are unable to conclude that the plaintiff has satisfied its burden of proving that these entries were the result of a mere "editorial error" and should simply be ignored.

Other jurisdictions that have addressed the issue provide ample persuasive authority to support the position that an attempt to amend a previously repealed statute is generally ineffective.[12] See *Oldham* v. *Rooks*, 361 So. 2d 140, 143 (Fla. 1978) ("[a]s a general rule of statutory construction, an act amending a section of an act repealed, even by implication, is void"); *Lampkin* v. *Pike*, 115 Ga. 827, 829, 42 S.E. 213 (1902) ("[t]he legislature has general power to amend statutes, but an amendatory act, to be valid as such, must relate to an existing statute, and not to one which is nonexistent, or has been repealed" (internal quotation marks omitted)); *Taylor* v. *Board of Commissioners*, 147 Idaho 424, 436, 210 P.3d 532 (2009) ("Generally, courts hold that a repealed act cannot be amended since an amendatory act alters, modifies, or adds to a prior statute. . . . Without an act in place, there is nothing to amend." (Citation omitted; footnote omitted.)); *Griffin Telephone Corp.* v. *Public Service Commission*, 236 Ind. 29, 34, 138 N.E.2d 150 (1956) ("an act which attempts to amend a [nonexistent] law or section, is itself void and of no legal effect"); *Dept. of Revenue* v. *Burlington Northern, Inc.*, 169 Mont. 202, 209, 545 P.2d 1083 (1976) (state statute providing that "[a]n act amending a section of an act repealed is void" (internal quotation marks omitted)); *State* v. *Brennan*, 89 Mont. 479, 486, 300 P. 273 (1931) ("[i]t was not possible for the [l]egislature to put life into a dead statute by amendment of it"); *State* v. *Blackwell*, 246 N.C. 642, 643, 99 S.E.2d 867 (1957) ("It thus appears that the amendatory act . . . on which the [s]tate relies . . . purportedly amends a statute which had been repealed. Thus the amendatory act . . . is a nullity. This is so for the reason that where . . . an entire independent section of a statute is wiped out of existence by repeal, there is nothing to amend."); see also *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L. Ed. 264 (1868) ("the general rule, supported by the best elementary writers, is, that when an act of the legislature is repealed, it must be considered . . . as if it never existed" (footote omitted; internal quotation marks omitted)).

Authoritative secondary sources provide further support for this rule. See 1A N. Singer & J. Singer, Sutherland Statutes & Statutory Construction (7th Ed. 2009) § 22:3, p. 253 ("When an act has been repealed by a general repealing clause or by implication, the fact of its repeal is sometimes overlooked and a new act purports to amend it. This raises the issue of whether a repealed statute can be amended. Since an amendatory act alters, modifies, or adds to a prior statute, all courts hold that a repealed act cannot be amended. No court will give the attempted amendment effect to revive a

repealed act."); see also 82 C.J.S., supra, § 296, p. 371 ("It has been held that a statute which has been repealed in its totality cannot be amended. The supposition of the legislature that the statute is still in force as evidenced by the attempted amendment can make no difference." (Footnote omitted.)).[13]

We also disagree with the Appellate Court's conclusion that the conflict between P.A. 03-184 and P.A. 03-265 can be resolved by application of § 2-30b (a). As previously stated in this opinion, that statute only applies "[w]hen two or more acts passed at the same session of the General Assembly *amend* the same section of the general statutes . . . ." (Emphasis added.) General Statutes § 2-30b (a). Because no specific definition of the verb "amend" is supplied, we ascertain its meaning by looking to the ordinary use of that word at the time the legislature chose to employ it and, more broadly, by examining the relationship of § 2-30b to other statutes. See General Statutes § 1-2z. At the time the language set forth in § 2-30b (a) was first enacted, the word "amend" was defined in the following manner: "To improve. To change for the better by removing defects or faults. . . . To change, correct, revise." (Citation omitted.) Black's Law Dictionary (4th Ed. 1968) p. 106. This concept stood in explicit contrast to the word "repeal," the entry for which contains the following notation: " 'Repeal' of a law means its complete abrogation by the enactment of a subsequent statute, whereas the 'amendment' of a statute means an alteration in the law already existing, leaving some part of the original still standing." Id., p. 1463. In this case, P.A. 03-184 did not change, correct, revise or alter § 14-55; rather, it eliminated the statutory provision in its entirety. The meaning of the word "amend" in § 2-30b (a) must also be construed in a manner consistent with General Statutes § 2-18, which provides in relevant part: "Each bill for a public act amending any statute . . . shall set forth in full the act . . . or the section or subsection thereof, to be amended. Matter to be omitted or repealed shall be surrounded by brackets and new matter shall be indicated by underscoring . . . ." There is no dispute that P.A. 03-184 does not conform to this requirement. See footnote 3 of this opinion.

Reading the plain language of § 2-30b in this light, we are simply not at liberty to accept the plaintiff's argument that the express repeal contained within P.A. 03-184 was intended to "amend" § 14-55, as that term has been employed by the legislature. As a result, we conclude that the Appellate Court improperly applied § 2-30b (a) to the present case. We view this reading as entirely consistent with our previous construction of § 2-30b in *State* v. *Kozlowski*, supra, 199 Conn. 676, on which we may continue to rely. See, e.g., *Kasica* v. *Columbia*, 309 Conn. 85, 94, 70 A.3d 1 (2013) (noting that § 1-2z does not require this court to overrule prior judicial interpretations of statutes). In *Kozlowski*, we

concluded that a public act employing the prefatory phrase "[s]ection 14-227a of the general statutes is repealed and the following is substituted in lieu thereof," but which otherwise followed "the format prescribed by . . . § 2-18," was amendatory in nature and, therefore, subject to the rule set forth in § 2-30b. (Internal quotation marks omitted.) *State* v. *Kozlowski*, supra, 671–72, 676. Then, as now, the focus of our inquiry was whether the legislature intended to amend an existing statute. Id., 676. If we are to limit the word "amend" to its plain meaning, an outright repeal would not qualify as an amendment so as to justify the application of § 2-30b.

Finally, we note that the Legislative Commissioners' Office did not apply § 2-30b when faced with a similar scenario in 2011. During the legislative session that year, the General Assembly passed two separate public acts relating to General Statutes (Rev. to 2011) § 32-717,[14] which had called on, among others, the Commissioner of Economic and Community Development, to prepare recommendations for an implementation plan and budget for the establishment of an "Innovation Network" to facilitate job growth. That statute was expressly repealed by a budget implementation bill; see Public Acts 2011, No. 11-48, § 303 (P.A. 11-48); that passed the second house of the legislature on June 1, 2011, and was signed by the governor on July 1, 2011. Notwithstanding that repeal, the legislature sought to make substantive amendments to § 32-717 later that same session. Specifically, No. 11-140, § 11, of the 2011 Public Acts (P.A. 11-140), which passed the second house of the legislature on June 7, 2011, and was signed by the governor on July 8, 2011, sought to give the Commissioner of Economic and Community Development the authority to actually establish such an "Innovation Network" and added, inter alia, a significant, new provision detailing the scope of that entity's activities. As in the present case, the subsequent revision of the General Statutes listed § 32-717 as repealed. See General Statutes (Rev. to 2013) § 32-717.[15] That entry has now remained unchanged for nearly one decade.

The plaintiff argues that this example is inapposite because the Legislative Commissioners' Office appeared to have "simply made a mistake" in reconciling P.A. 11-48 and P.A. 11-140. This argument fails to account for the fact that the legislature's express ratification of the 2013 revision, without subsequent corrective legislative action, demonstrates that the decision to list § 32-717 as repealed in the 2013 revision was not the result of inadvertence or neglect but, rather, the consistent and studious application of established rules of statutory construction. This provides good reason to believe that the Legislative Commissioners' Office conducted a similar, thorough review of the contradictory public acts at issue in the present case and applied the same principles of statutory construction in compiling the subsequent

revision.

It has now been fifteen years since the 2005 revision of the General Statutes was promulgated and, despite having passed multiple amendments to the statutory scheme governing certificates of approval of the location; see footnote 6 of this opinion; the legislature has not yet seen fit to reenact the provisions previously set forth in § 14-55. Our role in the present appeal is simply to determine and follow the will of the legislature. See, e.g., *Ashmore* v. *Hartford Hospital*, 331 Conn. 777, 787, 208 A.3d 256 (2019) ("When we construe a statute, we act not as plenary lawgivers but as surrogates for another policy maker, [that is] the legislature. In our role as surrogates, our only responsibility is to determine what the legislature, within constitutional limits, intended to do." ((Internal quotation marks omitted.)). Mindful of that singular duty, we conclude that § 14-55 has been repealed.[16]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the plaintiff's remaining claims.

In this opinion the other justices concurred.

* January 25, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] All references to § 14-55 in this opinion are to the 2003 revision of the General Statutes.

[2] For the sake of simplicity, we refer to Pasquale Pisano and Pisano Brothers Automotive, Inc., collectively as the defendants and to them individually by name. We refer to the Zoning Board of Appeals of the City of Stamford as the board.

[3] P.A. 03-184, § 10, provides, in its entirety: "(*Effective October 1, 2003*) Sections 14-55, 14-67k and 14-322 of the general statutes are repealed." (Emphasis in original.)

[4] P.A. 03-265, § 9, provides as follows: "Section 14-55 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2003*):

"In any town, city or borough the local authorities referred to in section 14-54 shall, upon receipt of an application for a certificate of approval referred to in said section, assign the same for hearing within sixty-five days of the receipt of such application. Notice of the time and place of such hearing shall be published in a newspaper having a general circulation in such town, city or borough at least twice, at intervals of not less than two days, the first not more than fifteen, nor less than ten days, and the last not less than two days before the date of such hearing and sent by certified mail to the applicant not less than fifteen days before the date of such hearing. All decisions on such certificate of approval shall be rendered within sixty-five days of such hearing. The applicant may consent to one or more extensions of any period specified in this section, provided the total extension of any such period shall not be for longer than the original period as specified in this section. The reasons for granting or denying such application shall be stated by the board or official. Notice of the decision shall be published in a newspaper having a general circulation in such town, city or borough and sent by certified mail to the applicant within fifteen days after such decision has been rendered. Such applicant shall pay a fee of ten dollars, together with the costs of publication and expenses of such hearing, to the treasurer of such town, city or borough. No such certificate shall be issued until the application has been approved and such location has been found suitable for the business intended, with due consideration to its location in reference to schools, churches, theaters, traffic conditions, width of highway and effect on public travel. In any case in which such approval has been previously granted for any location, the local authority may waive the requirement of a hearing on a subsequent application. In addition, the local authority may waive the requirement of a hearing on an

application wherein the previously approved location of a place of business is to be enlarged to include adjoining or adjacent property." (Emphasis in original.)

[5] Number 03-278, § 40, of the 2003 Public Acts (P.A. 03-278), which became effective on the date of its passage, July 9, 2003, made technical changes to § 14-55. Because those changes can either be harmonized with the amendments made in P.A. 03-265; see General Statutes § 2-30b (b); see also *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 192 Conn. App. 288; or, in the alternative, can be read simply as operative up to the point of the repeal effected by P.A. 03-184, the passage of P.A. 03-278 is not dispositive of the issues presented in this appeal.

[6] The legislature has, however, since chosen to amend the statutory provision that requires certificates of approval of the location, § 14-54, on several occasions. These amendments include not only an act passed in a special session later that same year; see Public Acts, Spec. Sess., June, 2003, No. 03-6, § 70; but also various other acts passed over the years that followed. See Public Acts 2016, No. 16-55, § 4; Public Acts 2006, No. 06-133, § 23; Public Acts 2005, No. 05-218, § 22.

[7] Seven subsequent revisions, each of which indicates that § 14-55 was repealed, were ratified in the same manner. See Public Acts 2019, No. 19-39, § 1; Public Acts 2017, No. 17-16, § 1; Public Acts 2015, No. 15-9, § 1; Public Acts 2013, No. 13-16, § 1; Public Acts 2011, No. 11-14, § 1; Public Acts 2009, No. 09-57, § 1; Public Acts 2007, No. 07-12, § 1.

[8] Both the trial court and the Appellate Court observed that the certificate of approval ultimately issued by the board " 'looks and reads like a variance.' " *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 192 Conn. App. 291. We are constrained to agree but pause to observe that the dispute between the parties before us relates only to a claim that the board improperly issued a certificate of approval of location. Indeed, in the pleadings initiating this proceeding, the plaintiff specifically appealed "from the granting of a certificate of approval of location . . . ."

[9] The Appellate Court also agreed with the plaintiff's contention that the trial court had improperly reached beyond the board's explicit findings, which employed language typical of a variance; see footnote 8 of this opinion; to find compliance with the requirements of § 14-55. *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 192 Conn. App. 293–95. The Appellate Court concluded that the board itself was required to make those findings. Id., 295–96.

[10] The plaintiff raises three distinct procedural arguments that warrant brief attention. First, the plaintiff asserts that our review of this certified question is barred because the defendants did not challenge the continued validity of § 14-55 before the trial court. Our own review of the record indicates that, notwithstanding its general adoption of the board's brief, the defendants did, in fact, expressly rely in part on the legislature's repeal of § 14-55 during oral argument before the trial court. The question of that statute's continuing validity was then squarely addressed in both the trial court's memorandum of decision and by the Appellate Court on appeal. Second, the plaintiff argues that we should decline to address several new legal arguments advanced by the defendants relating to the application of § 2-30b and the legislative ratification embodied in P.A. 05-12. We reject this claim as well. See, e.g., *Jobe* v. *Commissioner of Correction*, 334 Conn. 636, 644 n.2, 224 A.3d 147 (2020) ("[o]ur rules of preservation apply to claims, but they do not apply to legal arguments, and, therefore, [w]e may . . . review legal arguments that differ from those raised below if they are subsumed within or intertwined with arguments related to the legal claim before the court" (internal quotation marks omitted)). Finally, the plaintiff's claim that the defendants have caused it prejudice by attempting to interject new evidence relating to the internal procedures of the Legislative Commissioners' Office lacks merit because the defendants' argument simply relies on references to various pieces of legislation passed by the General Assembly.

[11] In dismissing the importance of statutory revisions, the Appellate Court relied on its previous decision in *Figueroa* v. *Commissioner of Correction*, 123 Conn. App. 862, 870, 3 A.3d 202 (2010), cert. denied, 299 Conn. 926, 12 A.3d 570 (2011), for the proposition that "compilations of public acts prepared by the Legislative Commissioners' Office do not constitute the actual law of this state . . . ." *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 192 Conn. App. 285 n.5. We disagree with that reliance for two distinct reasons.

First, the publications at issue in *Figueroa* were compilations of the public acts required by General Statutes § 2-58, and not legislatively ratified

revisions of the General Statutes produced pursuant to § 2-56 (g). See *Figueroa* v. *Commissioner of Correction*, supra, 123 Conn. App. 867–69. Although some of *Eld*'s progeny support a level of deference to the former; see *State* v. *Savings Bank of New London*, supra, 79 Conn. 147; *State* v. *South Norwalk*, supra, 77 Conn. 264–65; the present case involves only the latter. The formal ratification process attendant to the legislature's review of biennial revisions detailed previously in this opinion renders this distinction a meaningful one.

Second, the issue raised in *Figueroa* was fundamentally different. In that case, the Appellate Court addressed a claim that, when amending certain criminal statutes, the legislature had failed to comply with the enactment clause set forth in article third, § 1, of the Connecticut constitution. See *Figueroa* v. *Commissioner of Correction*, supra, 123 Conn. App. 870 (noting that "it is not the publication of these acts in the Public Acts compilations that makes them effective against members of the public, but their lawful passage by the General Assembly").

[12] We acknowledge that some jurisdictions may give effect to subsequent amendments to a repealed statute, provided the new statutory provision can stand independently without reliance on the previously repealed statute. See 1A N. Singer & J. Singer, Sutherland Statutes & Statutory Construction (7th Ed. 2009), § 22:3, pp. 253–54. That is not the circumstance presented by the present case, in which the amendment that passed after the repeal could not stand on its own without reliance on the repealed provision.

[13] The plaintiff argues that the result reached in the present case should be different because P.A. 03-265 was passed by the legislature before the effective date for P.A. 03-184. We disagree. As stated previously in this opinion, P.A. 03-265 amended § 14-55 without mention of P.A. 03-184, and both of those acts were assigned an effective date of October 1, 2003. If P.A. 03-265 became effective first, then § 14-55, in its newly amended form, would have been repealed by the subsequent effect of P.A. 03-184. Conversely, if the express repeal embodied by P.A. 03-184 became effective first, then the general rule that a repealed statute cannot be revived by a later amendatory act applies with full force. Either way, the result is the same: the legislature's express repeal governs.

[14] All references to § 32-717 in this opinion are to the 2011 revision of the General Statutes.

[15] We note that the state of Connecticut sought and received permission from this court to appear in the present case as amicus curiae, and that this example was drawn to our attention by its thoughtful and comprehensive brief.

[16] As a result of its conclusion that § 14-55 was not repealed, the Appellate Court declined to address certain other claims raised by the plaintiff. See *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 192 Conn. App. 293 n.10. Because those issues fall outside of the scope of the certified appeal before us; see *One Elmcroft Stamford, LLC* v. *Zoning Board of Appeals*, supra, 333 Conn. 936; we decline to address them in the present appeal.